*Let this be filed.*
*[signature], U.S.D.J.*
*6-19-08*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY D. RAY,                )
                              )
            Plaintiff,         )
                              )
      vs.                      )    Civil No. 06-1673 (RWR)
                              )
FEDERAL BUREAU OF PRISONS,     )
                              )
            Defendant.         )


PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, REPLY BRIEF AND
SUPPORTING PAPERS


Statement of the Case

     This is an action under the Freedom of Information Act
("FOIA"), 5 USC § 552.  The Plaintiff, Anthony Ray, a prisoner
who is proceeding pro se, brought the lawsuit to compel disclosure
of records and information in the files of the Defendant, Federal
Bureau of Prisons ("BOP").  The Complaint also requests declaratory
and injunctive relief, for Defendant's alleged willful failure to
comply with FOIA "response" requirements, and seeks costs of
litigation.

     Following service of the Complaint and Summons, Defendant
released a number of pages of records to Plaintiff, then filed
a motion for summary judgment and supporting papers claiming that:
BOP had produced all records and information in its files that is
responsive to Plaintiff's FOIA requests; there are no material
issues of fact in dispute; BOP is entitled to judgment in its

favor as a matter of law, under Rule 56(c) of the Federal Rules
of Civil Procedure ("Fed.R.Civ.P."); and the Complaint should be
dismissed as moot.  See Defendant's Memorandum of Points and
Authorities in Support of Defendant's Motion for Summary Judgment
(Defendant's Memo") at 1, 24.  Plaintiff responded to Defendant's
summary judgment motion by filing a Declaration in Opposition
to Defendant's Motion for Summary Judgment ("Plntf's Decl. in
Oppos.") and a Statement of Disputed/Unresolved Factual Issues
Precluding Summary Judgment in Defendant's Favor ("SDFI").
Together, Plaintiff's responses may be read as stating that, inter
alia, the Defendant had not disclosed all records responsive to
the FOIA request (including, but not limited to, a urine testing
contract between BOP and National Toxicology Laboratories, Inc.
("NTL")) and, therefore, summary judgment for Defendant should
not be granted.[1]  A few days after being served with Plaintiff's
response/opposition to the summary judgment motion, Defendant,
represented by different counsel, moved the Court for enlargment
of time to reply to said pleadings of Plaintiff.  The apparent
objective of Defendant's prospective "reply" was to avoid entry of
an order denying the summary judgment motion, which the Court was
obliged to do on the record then before it.  Plaintiff did not
oppose Defendant's requests for time and three (3) such motions
were granted by the Court.

---

[1]  The pleadings of unrepresented prisoner litigants are entitled to liberal construction to
do justice and may not be held to the same standards as pleadings drafted by lawyers.  See Haines
v. Kerner, 404 US 519 (1972); McNeil v. United States, 508 US 106, 113 (1993) ("...we have insisted
that the pleadings prepared by prisoners who do not have access to counsel be liberally construed").

On March 17, 2008, Defendant filed its much delayed Reply Brief, together with an amended Declaration of Wilson J. Moorer ("Moorer Decl. II"), an Amended Statement of Material Facts as to Which There Is No Genuine Issue ("ASFNGI"), and a Reply to Plaintiff's Statement of Disputed Facts ("RPSDF"). Relying upon these, Defendant again asks this Court to grant summary judgment in Defendant's favor and dismiss the complaint as moot. For the reasons set forth below, and in the papers filed herewith, the Court should: (1) enter an order denying Defendant's motion for summary judgment; (2) order Defendant to disclose to Plaintiff all information in its files pertaining to the cross-reactivity of the dental anesthetic Articaine/Septocaine (i.e., whether or not these drugs are capable of producing a false positive for cocaine in Enzyme Multiplied Immunoassay Technique ("EMIT"), Gas Chromatography, or any other test for the detection of cocaine in urine); (3) grant to Plaintiff such other and further relief as the Court may deem just and proper.

### Argument

I. THE DEFENDANT HAS NOT CARRIED ITS BURDEN FOR A GRANT OF SUMMARY JUDGMENT IN ITS FAVOR IN THIS CASE.

Standard of Review

"[T]o prevail in a Freedom of Information Act suit; the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." Weisberg v.

U.S. Dep't of Justice, 627 F2d 365, 368 (D.C.Cir.1980).  "It
is well settled in Freedom of Information Act cases...that [s]ummary
judgment may be granted only if the moving party proves that
no substantial and material facts are in dispute and that he is
entitled to judgment as a matter of law."  Id. (internal quotations
omitted)  See also, Steinberg v. U.S. Dep't of Justice, 23 F3d
548, 551 (D.C.Cir.1994) ("To obtain summary judgment in FOIA case,
agency must show, **viewing the facts in light most favorable to
requester,** that there is no genuine issue of material fact.")

"[A]n agency responding to a FOIA request must conduct a
search reasonably calculated to uncover all relevant documents,
and, if challenged, must demonstrate **beyond material doubt** that
the search was reasonable." Truitt v. U.S. Dep't of State, 897
F2d 540, 542 (D.C.Cir.1990).  "If, however, the record leaves
substantial doubt as to the sufficiency of the search, summary
judgment for the agency is not proper."  Id. (emphasis added)
An agency may rely upon affidavits to show it has conducted reason-
able search under FOIA request, as long as affidavits are relatively
detailed and nonconclusory and submitted in good faith.  Weisberg
v. U.S. Dep't of Justice, 705 F2d 1344, 1350 (D.C.Cir. 1983);
Oglesby v. U.S. Dep't of Army, 920 F2d 57, 68 (D.C.Cir. 1990).
"Reliance on affidavits to demonstrate agency compliance with
mandates of FOIA does not, however, require courts to accept
glib government assertions of complete disclosure or retrieval."
Perry v. Block, 684 F2d 121, 126 (D.C.Cir.1982).

-4-

A.  Defendant has not established that it disclosed all
records and information within the scope of Plaintiff's
FOIA request or that the search it conducted was reason-
ably likely to uncover all relevant documents.

In its Reply Brief, Defendant represents to the Court that
it "has conducted adequate search in response to plaintiff's
FOIA request, has disclosed all responsive non-exempt records
(including its supplemental disclosure of the NTL contract documents),
and no records have been improperly withheld from plaintiff." [2/]
Reply Brief at 2-3.  Plaintiff disputes these statements as being
unsupported by the record.

First, it is clear from the Complaint and subsequent pleadings
that, among other things, Plaintiff's FOIA request seeks disclosure
of documents and information in BOP files pertaining to drug
cross-reactivity; more specifically, information regarding the
ability of dental anesthetics Articaine and Septocaine to produce
a false positive result for cocaine (or its metabolite Benzoylecgo-
nine) in EMIT or other tests used to detect illicit substances
in urine.  See Plaintiff's Exhibit 1, annexed to Complaint ("My
final request is for copies of documents and/or disclosure of
information [pertaining to] metabolism and chemical structure of
a dental anesthetic given to me...[in] comparison to cocaine
metabolites that would cause a false positive urine test result.");

---

[2/]  Defendant made essentially the same assertions in its summary judgment motion, before being
confronted with, and forced to concede, fact that the NTL contract specifically requested by Plaintiff
was non-exempt and not disclosed. Defendant's contention that it is entitled to summary judgment
in its favor was invalid then and it is invalid now, notwithstanding claim that: "With the supple-
mental disclosure of the NTL documents, defendant has proved that it conducted an adequate search
and that it was responsive to plaintiff's FOIA request." Reply Brief at 5.

Plntf's Decl. in Oppos. at ¶ 17 ("My January 13, 2006 FOIA letter
makes explicit request for records and information concerning
possibility that certain dental anesthetic, Articaine, could or
could not have caused a false positive for cocaine metabolite
reported to be present in specimen # B01652926. **The Declaration
and Memorandum in support of Defendant's motion for summary
judgment do not demonstrate that the 252 pages of records concededly
withheld contain no information relating to Articaine's false
positive potential, or that records responsive to this part of
my request [are] not maintained in other BOP files.**" (emphasis
added)); Reply Brief at 3 ("Plaintiff... filed an Amended Complaint
...seeking the release of certain records...related to plaintiff's
positive drug test on November 9, 2005."); ASFNGI at 5 ("...plain-
tiff[] request[s]...informaiton relating to his appeal of the
positive results based on...allegation that he was taking prescibed
medication (articaine) that resulted in a false positive result.").[3]
See also, <u>Nation Magazine v U.S. Customs Service</u>, 71 F3d 885,
890 (D.C.Cir.1995) ("Although a requester must reasonably describe
the records sought...an agency also has a duty to construe a

---

[3] This last quoted passage is from the attached **Exhibit A** (BOP Administrative Remedy Appeal
at 1-2), which states in relevant part:

"At present, I have no hard evidence [that] the purportedly positive urine test at
issue is inaccurate or otherwise unreliable, though I have hopes that my pending
requests under the [FOIA] will lead to the discovery of such. I do however note the
following in support of my declaration of innocence and request for administrative
relief:

\*   \*   \*   \*   \*

5. The Pharmacist's statement that he found no comparison between metabolites
of anesthetic administered in contemporaneous dental procedure (septicaine), and
cocaine metabolite allegedly found in my urine sample, is too conclusory and  (cont'd)

FOIA request liberally."); <u>Truitt</u>, supra, 897 F2d at 543-44 (even
if an initial FOIA request fails to adequately describe records
sought, "[w]hen...an agency becomes reasonably clear as to the
materials desired, FOIA...makes plain the agency's obligation to
bring them forth").   BOP cannot claim on the record in this case
that it was not reasonably clear that Plaintiff sought records
and information pertaining to the cross-reactivity of Articaine
and Septocaine, yet its summary judgment motion, Reply Brief and
supporting papers make no mention of a search for such information
being conducted or explain why a search of other agency files is
unlikely to produce responsive documents.   This alone should
preclude summary judgment in Defendant's favor at this stage of
the proceedings because it leaves in substantial doubt whether
BOP files contain such information as well as the reasonableness
and adequacy of the agency's search for same.   See <u>Truitt</u>, 897
F2d at 542 ("If...the record leaves substantial doubt as to the
sufficiency of the search, summary judgment for the agency is
not proper.").   But there is more; a negative inference as to
the agency's good faith in responding to Plaintiff's FOIA requests
may be drawn from the following facts:   (1) drug testing laboratories

---

3/  (cont'd from preceding pg)
    unsupported by specifics to be relied upon by the DHO. The similarities in the names
    of the two drugs suggest common characteristics and, in the absence of more specific
    and authoritative information on the subject, the possibility that the anesthetic caused
    my urine to test positive should no[t] have be [sic] excluded.
                              *    *    *    *    *
    I request that action on this appeal be held in abeyance pending disclosure of information
    I have requested pursuant to the FOIA/PA, which I believe is material to the issues
    raised herein."

such as Phamatech and NTL have either conducted, or been provided access to, studies to determine the cross-reactivity of a wide range of substances in EMIT and other tests used to detect drugs of abuse, such as cocaine, in urine; (2) the Phamatech contract documents disclosed to Plaintiff by Defendant includes a "Non-Inclusive list of possible cross-reacting substances as related to Quickscreen tests for...[Cocaine]", and a "List of Cross-Reactive Substances"; [4] (3) both the Phamatech and NTL contract documents released by Defendant include terms which appear to make all drug cross-reactivity information in the files and records of the laboratories de facto files and records of the BOP. See attached **Exhibits** D (Phamatech contract documents) pp. 13 ("Contractor must provide 24 hours/day, seven days/week technical assistance"), 70 ("BOP department will have full access to our chief toxicologist and our laboratory manager") and **Exhibit E** (NTL contract documents) at 1 of 2 ("Contractor and any employee of the Contractor is considered to be an employee of the agency"), 2 of 2 ("contractor will...provide subject matter expert testimony"). It is also noted in this regard that, although Phamatech apparently provided BOP a "third party study" on the accuracy of the QuickScreen drug detection test along with other documents submitted as part

---

[4] Copies attached as **Exhibit B** and **Exhibit C**. Neither Articaine or Septocaine is among the substances included on these lists, but the possibility that BOP or Phamatech possesses information about the cross-reactivity of these particular dental anesthetics is as likely as not. Indeed, **Exhibit C** (List of Cross-Reactive Substances) confirms that procaine/novacaine, which is also used as a dental anesthetic, is capable of producing a false positive for cocaine in the QuickScreen test. See also, Campbell v. U.S. Dep't of Justice, 164 F2d 20, 27–28 (D.C.Cir. 1998) (finding agency search for requested records was inadequate where documents produce suggested existance of documents that could not be located without expanded search).

of its contract bid package,[5] that study information was not among the documents released to plaintiff; and while it is true that the Phamatech contract was not specifically requested in Plaintiff's FOIA request, records and information pertaining to the accuracy of drug tests in general is certainly within its scope, leaving open to question whether the study's withholding was the product of "blunder or subterfuge." Piper v. U.S. Dep't of Justice, 294 FSupp2d 16, 25 (D.D.C.2003) (observing "apparent cloud of contradiction" in agency's declaration and Vaughn index, and ordering disclosure of material previously withheld).

Furthermore, the Moorer Declartions offered in support of Defendant's summary judgment motion are insufficient to establish that there are no material facts in dispute as to the adequacy of the search and release of all relevant information because, inter alia:  (1) The declaration offers conclusory statement that "The Procurement Executive Office...searched all [national contract] files and areas likely to contain responsive...materials...with respect to Plaintiff's FOIA Request [for copy of Phamatech contract,]"[6] but fails to describe procurement office's filing system or provide details such as who conducted the search, what that persons qualifications are, or the process through which unsearched files

---

[5]  See attached Exhibit D at 13 ("The contractor product must have participated in a well regarded third party study for accuracy and contractor will provide results with proposal; (Refer to Exhibit 5- Third Party Study)"and Exhibit F.

[6]  Moorer Declaration II at 3.

were excluded.    See, <u>Steinberg</u>, supra, 23 F3d at 552, quoting

<u>Weisberg</u>, 627 F2d at 371 ("agency affidavits that do not denote

which files were searched, or by whom, do not reflect any systematic

approach to document location, and do not provide information speci-

fic enough  to enable the requester to challenge the procedures

utilized are insufficient to support summary judgment." (internal

quotations omitted)); <u>Oglesby</u>, supra, 920 F2d at 68 (an agency

cannot limit its search to only one record system if there are others

that are likely to turn up the information requested " (internal

quottions omitted)).  (2)  The declaration offers a conclusory

statement that the 252 pages of Phamatech contract documents withheld

from Plaintiff, which consist of consumer studies and questionnaires,

were "not responsive to [his] FOIA Request [because] not essential

to the basic request...which was [for] a copy of the Phamatech,

Inc. contract," but  is  contradicted by the record which indicates

that Plaintiff seeks the disclosure of certain cross-reactivity

information wherever  it may be found.  See, <u>Campbell v. U.S. Dep't

of Justice</u>, 164 F3d 20 (D.C.Cir.1998) (holding that reasonableness

of an agency's search for information requested under FOIA is

based on what the agency knew at conclusion of its search, rather

than what the agency speculated at search's inception, and reasons

that a declaration may be insufficient, for purposes of summary

judgment, are lack of detail and specificity, bad faith and failure

to account for contrary record evidence). See also, Plaintiff's

Amended Declaration in Opposition to Defendant's Motion for Summary

Judgment, incorporated herein by reference.

In sum, the pleadings and declarations filed on the record to date do not support a determination that BOP has satisfied its search and disclosure obligations under FOIA; a grant of summary judgment in Defendant's favor is, therefore, imporper. See, Nation Magazine, supra (search for records is inadequate to support summary judgment for agency in FOIA case where agency affidavit did not describe its recordkeeping in sufficient detail to permit identification of its subject matter files that were not searched).

    B.   Defendant's summary judgment motion and supporting papers do not establish that there is no material dispute or remedy available with respect to Plaintiff's claims that (1) BOP "arbitrarily and capriciously" delayed response to Plaintiff's FOIA requests until this lawsuit was filed, and (2) BOP has followed a "practice and custom" of ignoring and delaying response to prisoner FOIA requests unless and until a lawsuit is filed.

As is noted at 1, ante, the Complaint in this case requests this court to, among other things, grant declaratory and injunctive relief for Defendant's failure to comply with FOIA response

requirements. More specifically, the Complaint requests the
Court to declare the Defendant's failure to respond to Plaintiff's
FOIA request and make a more timely disclosure of records requested
was and is unlawful, and to issue an injunction to prevent the
BOP from continuing the "practice and custom" of ignoring and
delaying response to prisoner FOIA requests unless or until the
prisoner files a lawsuit. See Complaint at 3-4

BOP argues in its summary judgment, <sup>motion</sup> reply brief and supporting
papers, that the declaratory and injunctive relief reqeusted by
Plaintiff should not be granted because: (a) the Court lacks juris-
diction to grant declaratory or injunctive relief in FOIA cases
where, as alleged here, the plaintiff cannot show that "defendant
(1) improperly (2) withheld (3) agency records," Reply Brief at
5; and (b) "Plaintiff Fails To Satisfy Any Element Of The Test
That Must Be Satisfied Before A Court May Issue Injunctive Relief,"
Defendant's Memo at 21-24. These arguments must fail for the
reasons set forth below.

First, as the instant Memorandum and the Plaintiff's other
pleadings make clear, whether or not BOP conducted an adequate
search for and has released all material responsive to Plaintiff's
FOIA requests are issues which remain in dispute in this case.
This Court is not, therefore, deprived of jurisdiction to hear,
decide and grant relief on any claim of violation of FOIA.
A district court's authority to grant declaratory and injunctive
relief in a FOIA case is beyond dispute. See Long v. United States

-12-

I.R.S., 693 F2d 907 (9thCir.1982) (reversing district court's
denial of injunction to prohibit IRS from continuing practice
of withholding non-exempt records requested under FOIA, forcing
requesters to file lawsuit, and then voluntarily releasing docu-
ments); Payne Enterprises, Inc. v. United States, 837 F2d 486
(D.C.Cir.1988) (reversing district court denial of declaratory
and injunctive relief in FOIA case alleging unjustified delay in
releasing requested information); Maycock v. Immigration & Natural-
ization Srvc., 714 F.Supp.1558 (N.D.Cal.1989) (enjoining INS pattern
and practice of failing to produce certain categories of FOIA
information, and of failing to comply with FOIA statutory time
limits for agency response); Swan View Coalition v. Dep't of
Agriculture, 39 F.Supp.2d42 (D.D.C.1999) (exercising discretion to
deny declaratory judgment compelling timely response to FOIA
requests upon finding that untimely response problem was temporary);
see also, 28 USC § 2201; 5 USC § 552(a)(4)(B).

Next, it is noted that Defendant incorrectly states, "Plain-
tiff's prayer for relief requests a **preliminary** injunction."
Defendant's Memo. at 21.  In fact, the relief Plaintiff prays for
is a permanent injunction, the determination of which may be made
only after a final hearing on the merits.  United States v. Balti-
more & Ohio Railroad Co., 225 US 306, 322 (1912) ("...perpetual
injunction [to be determined] upon the entry of the final decree.");
Plummer v. American Inst.  Cert.Pub. Accountants, 97 F3d 220,
229 (7thCir.1996) ("permanent injunction...is a final judgment").

It is not clear to Plaintiff whether the four part "test" for
exercising discretion to grant a preliminary injunction, cited
in Defendant's Memo. at 21, is applicable to  permanent injunction
requested in a FOIA case brought by a prisoner to prevent alleged
"pattern and practice" of delays and withholdings from continuing.
Plaintiff submits that it does not for the following reasons:
(1) a four part test different from that cited by Defendant was
held applicable to permanent injunctions in eBay  v. MerckExchange,
LLC, ___US___, 164 LEd2d 641, 645-46 (2006); (2) in Farmer v. Brennan,
511 US 825, 845-46 (1994), the Supreme Court does not cite a
four part test in addressing whether a permanent injunction should
issue in a prison conditions case, but states that, "[a]n inmate
seeking an injunction on the ground that...a contemporary violation
[of law is] likely to continue...must adequately plead such a
violation [and] to survive summary judgment, he must come forward
with evidence from which it can be inferred that the defendant
officials [were knowingly and unreasonably violating the law] at
the time suit was filed...and that they will continue to do so";
(3) in Maycock, supra, a FOIA "pattern and practice" case in which
declaratory and injunctive relief was granted, the test cited by BOP
is not articualted; rather, the court appears to have taken into
account that

     (a)  "in determining whether injunctive relief is appro-
            riate to resolve a FOIA dispute, the court's prime
            consideration should be the effect on the public
            of disclosure or nondisclosure...[whether] prolonged
            delays have repeatedly hindered the timely disclo-
            sure of non-exempt documents...the likelihood of

recurrence...the good faith of any expressed intent
to comply...effectiveness, if any, of the discontin-
uance and the character of past violations...

(b)    "Plaintiff has presented substantial and uncontrover-
ted evidence that lengthy delays are systematic, and
that [the requester's clients were deported before
agency replies were received]"

Id. at 714 FSupp 1561.

Whatever standard this Court applies in making ultimate

decision to grant or deny declaratory and injunctive relief in

this case, it is clear that the Court has jurisdiction/authority

to do so, even after all records which gave rise to the lawsuit

have been produced, [7/] and that BOP has not met the burden for

summary judgment of demonstrating the absence of a genuine issue

of material fact with respect to the Complaint's allegation that

failure to respond to Plaintiff's request for records was due

to agency practice and custom of ignoring prisoner FOIA requests

unless and until a lawsuit is filed. [8/]  Plaintiff may or may not be

able to demonstrate that granting particular relief under discus-

---

[7/]  Defendant's contention, that "once the [requested] records are produced the substance of [all FOIA] controversy disappears and becomes moot", Reply Brief at 4, must be rejected in light of Renegotiation Board v. Bannercraft Co., 415 US 1, 19 (1974) ("With the express vesting of equitable jurisdiction in the district court by § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the **inherent powers** of an equity court..."); Long, supra 693 F2d at 909 ("In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief when appropriate...where the district court finds a probability that alleged illegal conduct will recur in the future, an injunction may be framed to bar future violations that are likely to occur."); Payne Enterprises, supra, 837 F2d at 494 ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms.").

[8/]  BOP has not filed affidavits or documentary evidence in support of summary judgment on the "pattern and practice" allegations underlying request for declaratory and injunctive relief. The legal arguments advanced by BOP with respect to Plaintiff's "practice and custom" claim and request for relief may most accurately be construed as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (6), and should be judged under the standard applicable thereto.

sion is warranted under the test articulated by BOP in its motion
and papers, or under some combination of factors identified in
eBay, Farmer, and Maycock; but, at the very least, final decision
of the question should be postponed while Plaintiff is allowed
to conduct discovery necessary to obtain relevant evidence, and
thus ensure the pro se prisoner Plaintiff a meaningful opportunity
to be heard with respect thereto.    However, Plaintiff submits
that, insofar as Defendant requests summary judgment in its favor
with respect to allegations of complaint underlying request for
declaratory judgment and permanent injunction, Defendant has not
met its burden; the Court should enter an order denying summary
judgment to Defendant.

      C.  Defendant's summary judgment motion should not be granted
because Plaintiff has been afforded no opportunity for
discovery of material facts and evidence within the
exclusive knowledge and control of the Defendant.

Summary judgment should not be granted "where the non-moving
party has not had the opportunity to discover information that
is essential to his opposition." Anderson v. Liberty Lobby,Inc.,
477 US 242, 250 n. 5.  In the instant case, Plaintiff, who is an
urepresented prisoner, has not been afforded any opportunity for
discovery of facts in the exclusive knowledge and control of the
Defendant regarding the adequacy of the search conducted in response
Plaintiff's FOIA request, the release of all responsive records,
and BOP's alleged practice and custom of withholding responses
to prisoner FOIA requests unless and until a lawsuit is filed.

Although Plaintiff believes he has presented facts and legal arguments sufficient to defeat summary judgment with respect to adequacy of BOP's search for responsive records, it impossible for Plaintiff to present evidence showing genuine issues for trial in the absence of an opportunity to conduct discovery. Accordingly, the Court should defer or deny Defendants motion for summary judgment. See Fed.R.Civ.P. 56(f); Plaintiff's Amended Declaration in Opposition to Defendant's Motion for Summary Judgment; Velikonja v. Mueller, 315 FSupp2d 66, 79 (D.D.C.2004) ("parties should be afforded a reasonable opportunity to complete discovery before grappling with a summary judgment motion...any potential problem with...premature summary judgment motions can be adequately dealt with under Rule 56(f), which allows deferral of summary judgment motion...if the nonmoving party has not had an opportunity to make full discovery").[9]

### Conclusion

For the reasons stated above, the Court should deny Defendant's motion for summary judgment, or defer decision on said motion until Plaintiff is afforded adequate opportunity to conduct discovery.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the statements herein are true and correct to the best of my knowledge, information and belief.

---

[9] Plaintiff submitted two discovery requests to Defendant which have gone unanswered; and when Plaintiff moved the Court to compel discovery, the motion was ordered denied.

Respectfully submitted,

_____
Anthony Ray


## Declaration of Mailing

I hereby declare that the foregoing Memorandum of Points and Authorities in Opposition to Defendant's Motion  for Summary Judgment was deposited in a receptacle for outgoing inmate mail, with first class postage prepaid and addressed to the Clerk, United States District Court for the District of Columbia, on this 5th day of June 2008.

_____
Anthony Ray


## Certificate of service

I hereby certify that a true and correct copy of the foregoing Memorandum of Points and Authorities was served on the Defendant on this 5th day of June 2008, when I deposited it a receptacle for outgoing inmate mail, with first class postage prepaid and addressed to:

    John G. Interrante
    Assistant U.S. Attoorney
    555 Fourth Street, N.W.
    Washington, D.C. 20530

_____
Anthony Ray

U.S. Department of Justice

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | **Ray, Anthony** | 04077-000 | A-1 | FCI Cumberland |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**    This is an appeal of the disciplinary action taken against me based on a report that my urine tested positive for the cocaine metabolite "Benzoylecgonine." The Incident Report (#1403543) charged and the DHO found me guilty of using an unpresribed (illegal) drug.  The follwoing sanctions were imposed: 20 days Disciplinary Segregation; 20 days DS suspended; Forfeit 60 days Statutory Good Time; 365 days loss of  Social Visiting Restriction, followed by 365 days Social Visting restricted to either non-contact visits or only immediate family members.

The primary basis upon which I request admistrative relief from the actions of the DHO in this case is, very simply, that I am innocent of the of the offense of having used illegal or unprescribed drugs.  At present, I have no hard evidence the purportedly positive urine test at issue is inaccurate or otherwise unreliable, though I have hopes that my pending requests under the Freedom of Information Act will lead to the discovery of such.  I do, however, note the following in support of my declaration of innocence and request for administrative relief:

1. In the 16 years I have been in the BOP's custody, during which I have submitted numerous urine samples for testing, there have been no reports of positive results until now.

| 1-17-06 | *Anthony Ray* |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

RECEIVED

JAN 2 3 2006

BUREAU OF PRISONS
MARO REGIONAL COUNSEL

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                                             CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**                                                    CASE NUMBER: 401720 R1

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| USP LVN | DATE | | SIGNATURE, RECIPIENT OF ORIGINAL | BP-230(13) |

BP-10, APPEAL OF DISCIPLINARY PROCEEDINGS,
p. 2 of 2.

2.  There is absolutely no information in my PSI, BOP files or other records which
indicates that I have a history of drug abuse.

3.  Inaccurate urinalysis results are not unprecedented and have been linked to
faulty storage, chain of custody, and testing procedures, as well as "false positives"
caused by prescription and non-prescription durgs or other substances.

4.  There is an apparent discrepancy in the indentification of the incriminating
specimen on the face of the DHO Report itself.  It is referred to alternately as # BO1652926
and # BOI652926, creating substantialdoubt as to the reliability and accuracy of the
entire disciplinary proceeding.  Compare DHO Report at 2, D. with id., at 3.

5.  The Pharmacist's statement that he found "no comparison" between metabolites
of anesthetic administered in contemporaneous dental procedure (septicaine), and the
cocaine metabolite allegedly found in my urine sample, is too conclusory and unsupported
by specfics to be relied upon by the DHO.  The similarities in the names of the two drugs
suggest common characteristics and, in the absence of more specific and authoritative
information on the subject, the possibility that the anesthetic caused my urine to test
positive should not have be excluded.

I submit as a furhter bases for granting my request for relief from the disciplinary
action against me, the DHO's failure to provide me with a written report of the proceeding
within the time required by 28 CFR § 541.17, g.

Lastly, I request relief from the disciplinary actions against me on the ground
that the sanctions imposed were excessive, particularly the restrictions on my visiting
privileges.  There is nothing in the record  of the proceedings which suggests even a
possibility of a link between the purportedly positive drug test and contact with persons
on my visiting list.  In fact, I did not have a visitor for 90 days or more preceding
the date  ` the urine sample in question was allegedly taken.  Furhtermore, the
impact of the visiting restrictions is especially adverse because I have elderly relatives
with whom I am close, and who may not be alive for me to visit with a year from now.

For the foregoing reasons, I request the following administrative remedy(s)/relief
from the disciplinary proceeding against me:
(a)  Reverse the finding of the DHO  that I committed a prohibited on the ground
of insufficiency/unreliability of the evidence; and/or
(b)  Remand for reinvestigation and rehearing of the matter in order to fully determine
and take into consideration, whether Septicaine (or whatever anesthetic was given to me
during during a 11/05 dental procedure) is capable of producing the cocaine metabolite
reported to have been found in my urine; and/or
(c)  Modify the sanctions imposed by the DHO--i.e., reduce or eliminate restrictions
on my visiting privileges.
Alternatively, I request that action on this appeal be held in abeyance pending
disclosure of informaiton I have requested pursuant to the FOIA/PA, which I believe is
material to the issues raised herein.

Non-inclusive list of possible cross-reacting substances as related to quick-screen tests for MET, AMP, THC, COC, OPI. (Please keep confidential)

| TYPE OF DRUG | QuickScreen | Category | LAB | NOTES |
|---|---|---|---|---|
| Adderal (has Phentermine) | YES | AMP | YES | Amphetamine. ADD Medication. (Dextroamphetamine) |
| Artane | YES | | NO | Antiparkinson drug and pills. If cough in urine will screen positive. |
| Albuterol (Proventil) | YES | MET | NO | Respiratory. reversible obstructive airway disease. May cause reaction MET panel |
| Aleve | NO | - | | Pain medication and dental. |
| Allegra | NO | - | - | Antihistamine. Seasonal allergic rhinitis. |
| Ambien | NO | - | - | Insomnia |
| Amoxicillin | NO | - | - | Antibiotic |
| Barlefan | maybe | met, amp | - | possible react with meth or amp. Antispastic |
| Benadryl | NO | - | - | Supressant |
| Benzphetamine | YES | - | YES | Dietary. Appetite suppressant |
| Buspar | NO | - | YES | Anxiety Disorder |
| Carminal | maybe | met, amp | maybe | Depression. May also show positive screen for PCP. |
| Carisoprodol (Soma) | maybe | - | - | Anti-pain med and muscoskeletal conditions. |
| Catapress (Clonidine) | NO | - | - | Acute tension. Narcotic withdrawal. High Blood Pressure. Cramps. Migranes. |
| Celebrex | NO | - | - | Osteoarthritis and Rheumatoid Arthritis - Adults |
| Cheese | NO | - | - | Anti depression |
| Cheese of Magnesia | NO | - | - | Laxative |
| Claritin D | NO | - | - | Seasonal Allergic Rhinitis |
| Clonazepam | NO | - | - | Anti-Histamine |
| Clonidine (Catapress) | NO | - | - | Blood Pressure. ADD. Antihypertensive. |
| Cozar (Losartan) | NO | - | - | Hypertension |
| Darvocet (Propoxyphene) | NO | - | - | Pain Medication |
| Dayquil | NO | - | - | Pain Medication |
| Demerol | NO | - | - | Cold and Flu |
| Depakote (Divalproex Sodium) | NO | - | - | Pain Medication |
| Desoxyn | NO | - | - | Mania - Bipolar Disorder |
| Desyrel | YES | AMP | YES | Narcolepsy. Obesity. ADD. |
| Dexedrine | YES | AMP | YES | Amphetamine. Narcolepsy. ADD. |
| Dextromethorphan | YES | OPI | NO | Massive amount. In cough and cold medicine. |
| Dextrostat | YES | AMP | YES | Amphetamine. Narcolepsy. ADD with hyperactivity. |
| Diazepam (Valium) | NO | - | - | Benzodiazepine. Anxiety disorders, spasms. Refer to Dr.'s Office. |
| Didrex | YES | MET | NO | Prescription diet pill. |
| Diethylpropion | | | | Exogenous obesity. |
| Dilaudid (Hydromorphone) | YES | OPI | YES | Narcotic analgesic. Hydrogenated ketone of morphine. |
| Divalproex Sodium (Depakote) | NO | - | | Mania - Bipolar Disorder |
| Doxepine | NO | - | | Manic-Depressive. Psychoneurosis, depression, anxiety. |
| Ecstasy (MDMA, MDA) | YES | MET | YES | Lab will confirm MDMA, MDA. |
| Effexor | maybe | MET, AMP | MAYBE | Depression. May also show positive screen for PCP. |
| Elavil | NO | - | NO | Depression |
| Entex LA | NO | - | - | Allergy related |
| Ephedrine | MAYBE | MET | NO | NO with ... Sinusitis, bronchitis, pharyngitis. MASSIVE dose may give METH positive result. |
| Erythromycine | MAYBE | - | - | Antibiotic |
| Flexeral | NO | - | NO | Muscle ... painful muscoskeletal condition. |
| Flonase | NO | - | NO | Allergic rhinitis. |

Non-inclusive list of possible cross-reacting substances. ... AMP, THC, BAR, COC, OPI. (Please keep confidential)

| Substance | | Code | | Notes |
|---|---|---|---|---|
| Gum | NO | - | NO | Refer to their Doctor |
| Robitussin AC | NO | - | NO | |
| Guaifenesin | NO | - | NO | |
| Guaifenesin AC | NO | - | NO | |
| Halcion (Triazolam) | NO | OPI | NO | |
| Robitussin AC (HCl) | YES | OPI | NO | |
| Hydro Norethiazide (HCTZ) | NO | - | NO | |
| Hydrocodone (Vicodin) | YES | OPI | YES | |
| Hydromorphone (Dilaudid) | YES | OPI | YES | Pain Medication. |
| Hydroxyzine | NO | - | NO | |
| Imipramine | NO | - | NO | |
| Immovilian AD | NO | - | NO | Diarrhea |
| Tonamin (Phentermine) | YES | AMP | NO | |
| Isoproterenol (Isupred or Norisodrine) | YES | MET | NO | |
| Imodium Special K | NO | - | NO | |
| Methadone | NO | - | NO | |
| Isopropanol (Dronenan Levo-Dromoran) | YES | OPI | YES | Pain Medication. |
| Lomotil | NO | - | NO | Diarrhea |
| Loraced (Hydrocodone) | YES | OPI | NO | Hydrocodone, Pain Medication. |
| Lonadil | YES | OPI | NO | Hydrocodone, Pain Medication. |
| Loratan (Cozar) | NO | - | NO | |
| LSD | NO | - | NO | Hallucinogen |
| HMMA, MDA (Ecstasy) | YES | MET | YES | Lab will confirm MDMA, MDA. |
| Mescaline | YES | - | NO | Follow Lab Procedure. $100.00. |
| Methadone | NO | - | NO | Diet Aide |
| Polythrometate | NO | - | NO | Hallucinogen (Special K like), Narcotic Detoxification. |
| Methyldopa (Aldoclor) | YES | AMP | NO | Blood Pressure. |
| Metclopramide (Reglan) | YES | COC | NO | POSSIBLE cocaine positive, negative GC/MS. Symptomatic gastroesophageal reflux. |
| Metaxipine (Ponraxen) | NO | - | NO | Depression |
| Nalbuphine (Nubain) | YES | OPI | YES | Pain Medication, Pre / Post Op. |
| Nalaxone (Narcan) | YES | OPI | NO | POSSIBLE Opiates, negative GC/MS, Narcotic Depression. |
| Naltrexone (Revia) | YES | OPI | NO | POSSIBLE Opiates, negative GC/MS, Blocade of Alcoholic Dependence. |
| Naproxen | NO | - | NO | |
| Nasonex | NO | - | NO | |
| Nefazodone (Serzone X) | NO | - | NO | |
| Neopolymycin | NO | - | NO | |
| Neurontin | NO | - | NO | Antiepileptic / seizure, mood disorder. |
| Novacaine | NO | - | NO | Dental |
| Nyquil | NO | - | NO | Cold Medicine |
| Oxycodone (Percodan / Percocet) | YES | OPI | NO | Massive amount will screen prelim positive. Pain Medication. |
| Oxycontin | YES | OPI | NO | Narcotic analgesic. |
| Paxil | NO | - | NO | Anti-Anxiety, Depression. |
| Penicillin | NO | - | NO | Antibiotic. |
| Pepto Bismol | NO | - | NO | Diarrhea |

Non-Inclusive list of possible cross reacting substances as related to QuikScreen tests for BZL, AMP, THC, COC, OPI. (Please keep confidential)

| Drug | QuickScreen | Type of Drug | Screen Positive | Description |
|---|---|---|---|---|
| Percocet / Percodan (Oxycodone) | YES | OPI | NO | Massive amount will screen prelim positive. Pain Medication. |
| Phenergan | NO | | - | Allergic Rhinitis |
| Phentermine | YES | AMP | NO | Massive amount will screen prelim positive. |
| Permoline Mist | YES | AMP | NO | ... |
| Propoxyphene (Darvocet, Darvon) | NO | | - | Pain Medication |
| Quinidine | NO | | - | ... Anti-Arrhythmia. |
| Pamelrine X (Zantac) | YES | MET/PCP | NO | ... Anti-Arrhythmia, Sour Stomach |
| Podiv | NO | | - | ... |
| Premaron | NO | | - | Depression |
| Prozac | NO | | - | Depression |
| Prodoril (Temazepam) | NO | | - | Short Term Sleep Medication |
| Pip-Tini | NO | | - | Vitamin |
| Pitkin | NO | | - | ... |
| Prohytrol | NO | | - | Anti-... |
| Pravelen | NO | | - | Dale Date drug ... Depressant, Sedative. |
| Pravalen | Mevlo | | - | Upper Respiratory Tract |
| Sompret-D | NO | | - | ... |
| Serapul | NO | | - | Anti-Psychotic |
| Seroquel | NO | | - | ... Anti-Psychotic |
| Serzone X (Nefazodone) | NO | | - | Depression |
| Soma (Carisoprodol) | NO | | - | Pain medication, muscular related conditions. |
| Special K / Ketamine | NO | | - | Tranquilizer |
| Surfaced | NO | | - | Antidepressant, Sinus. |
| Sustar | Unknown | | - | ... |
| Sustiva-Efavirenz | YES | THC | NO | Aids drug ... will cause "FALSE" THC positive screen. |
| Talwin | NO | | - | Moderate Pain Medication. |
| Temazepam (Restoril) | NO | | - | Short Term Sleep Medication |
| Tenvate Dospan | NO | | - | ... |
| Tramadol (Ultram) | NO | | - | Pain Medication |
| Trazodone | NO | | - | Anti Depressant |
| Ultram | NO | | - | Pain Medication |
| Valium (Diazepam) | NO | | - | Anti-Anxiety |
| Viagra | NO | | - | Impotence |
| Vicodin (Hydrocodone) | YES | OPI | YES | Pain Medication |
| Vioxx | NO | | - | Arthritis Medication |
| Vistaril | NO | | - | Anxiety, tension, psychoneurosis |
| Wellbutrin | NO | | - | Depression |
| Xanax | NO | | - | Anti-Anxiety |
| Xenical | NO | | - | Weight Loss |
| Yellow Jackets | NO | | - | Barbiturate, depressant |
| Zantac (Ranitidinex) | YES | MET/PCP | NO | Prescription Doses Only |
| Zithromax | NO | | - | Pneumonia, Mild to moderate infection. |
| Zocor | NO | | - | Vascular Disease, Lipid Altering Agent. |
| Zoloft | NO | | - | Anti-Anxiety, Depression. |
| Zyprexa | NO | | - | Anti-Psychotic, Psychotic Disorders. |
| Zyrtec | NO | | - | Allergic Rhinitis |

**Notes:** "QuickScreen" column:

YES = the "Type of Drug" can cause a screen positive result.

**Non-inclusive list of possible cross-reacting substances as related to QuickScreen tests for MET, AMP, THC, COC, OPI. (Please keep confidential)**

"Drug" column:

   NO = the "Type of Drug" will not cause a screen positive result.

   Refers to the drug category, or strip on the QuickScreen device where the result will appear.

"LAB" column:

   Refers to the subsequent result of GC/MS confirmation on the sample.

This chart does *not* include the following categories: Barbiturates, Benzodiazepines, PCP, or Methadone

Exhibit C, 1 of 1

### List of Cross-Reactive Substances

The following compounds were spiked into normal human urine and tested for cross-reactivity with the QuickScreen™ Cup Multi Drug Screening Test. The results (in µg/mL) are expressed as that amount of compound capable of giving a result equivalent to the target drug at its cutoff concentration. Except as noted, a blank space indicates that no cross-reactivity was observed to 100 µg/mL.

| Compound | BAR | BZD | MTD | AMP | MET | COC | THC | OPI | PCP |
|---|---|---|---|---|---|---|---|---|---|
| Amobarbital | 0.15 | | | | | | | | |
| Aprobarbital | 0.05 | | | | | | | | |
| Barbital • Butabarbital • Pentobarbital | 0.025 | | | | | | | | |
| Butalbital | 0.3 | | | | | | | | |
| Buterhal | 0.075 | | | | | | | | |
| 5,5-Diallylbarbituric Acid | 0.1 | | | | | | | | |
| Phenobarbital • Secobarbital | 0.3 | | | | | | | | |
| (±)-Thiopental | 9.5 | | | | | | | | |
| Alprazolam[A] • Clonazepam | | 0.5 | | | | | | | |
| Bromazepam | | 0.6 | | | | | | | |
| Chlordiazepoxide | | 0.3 | | | | | | | |
| Desmethyldiazepam | | 0.25 | | | | | | | |
| Diazepam • Flunitrazepam • Lormetazepam | | 0.4 | | | | | | | |
| Flurazepam • Medazepam • Prazepam | | 1.0 | | | | | | | |
| (±)-Lorazepam • Triazolam[B] | | 0.5 | | | | | | | |
| Nitrazepam • Oxazepam | | 0.2 | | | | | | | |
| Temazepam | | 0.25 | | | | | | | |
| (−)-α-Acetylmethadol (LAAM) | | | 1 | | | | | | |
| (−)-α-Methadol | | | 0.8 | | | | | | |
| (±)-Methadone | | | 0.3 | | | | | | |
| d-Amphetamine | | | | 1 | 20 | | | | |
| dl-Amphetamine | | | | 10 | 50 | | | | |
| l-Amphetamine • (R)-(+)-α-Phenylethylamine | | | | 100 | 100 | | | | |
| 3-Hydroxytyramine • (±)-α-Methylethylamine | | | | 10 | | | | | |
| Methamphetamine | | | | 100 | 10 | | | | |
| (±)-3,4-Methylenedioxyamphetamine | | | | 4.5 | 100 | | | | |
| β-Phenylethylamine | | | | 10 | | | | | |
| Tyramine | | | | 12.5 | 62.5 | | | | |
| N-Acetylprocainamide • (+)-ψ-Ephedrine | | | | | 100 | | | | |
| (−)-Deoxyephedrine | | | | | 1 | | | | |
| (+)-Ephedrine • (±)-Ephedrine • Fenfluramine | | | | | 100 | | | | |
| (±)-Isoproterenol | | | | | 1.5 | | | | |
| (+)-Methamphetamine | | | | | 0.5 | | | | |
| (±)-3,4-Methylenedioxymethamphetamine | | | | | 3.5 | | | | |
| Nylidrin | | | | | 5 | | | | |
| Benzoylecgonine • Cocaine | | | | | | 0.3 | | | |
| Metoclopramide | | | | | | 25 | | | |
| Procaine • Pyrilamine | | | | | | 100 | | | |
| 11-Hydroxy-Δ⁹-THC[C] | | | | | | | 1 | | |
| 11-Nor-Δ⁸-THC-9-Carboxylic Acid[C] | | | | | | | 0.1 | | |
| 11-Nor-Δ⁹-THC-9-Carboxylic Acid[C] | | | | | | | 0.05 | | |
| Δ⁸-Tetrahydrocannabinol | | | | | | | 100 | | |
| Δ⁹-Tetrahydrocannabinol | | | | | | | 0.05 | | |
| 6-Acetylmorphine • Hydromorphone | | | | | | | | 10 | |
| Codeine | | | | | | | | 1 | |
| Ethylmorphine[B] • Morphine • Nalorphine | | | | | | | | 2 | |
| Heroin[B] • Hydrocodone | | | | | | | | 2.5 | |
| Morphine-3-β-D-Glucuronide | | | | | | | | 5 | |
| EDDP (Primary Methadone Metabolite) | | | | | | | | | 25 |
| Phencyclidine | | | | | | | | | 0.025 |

[A] A blank space indicates that no cross-reactivity was observed when the compound was tested to 25 µg/mL.

[B] A blank space indicates that no cross-reactivity was observed when the compound was tested to 10 µg/mL.

[C] A blank space indicates that no cross-reactivity was observed when the compound was tested to 5 µg/mL.

Exhibit D, 1 of 2

Bureau of Prisons Solicitation                                          **Page 3**
Solicitation Number: RFQ-NAS-0021-2207                          **Phamatech, Inc.**

**Requirements Met**
**and / or Concur**
Yes    No

### III.    *Test Panels, Sensitivity, and Accuracy (continued):*

b.  The contractor must also have, as an available option,
an adulteration strip                                                    _x_    ____

c   To prevent leaching, each drug test (one drug per strip) must
be in its own individual test strip chamber/channel and have
its own test control and test result lines.                              _x_    ____

c.  Each test strip chamber/channel must have a control line
indicator to determine that the test has functioned properly            _x_    ____

d.  The contractor must provide a list of drugs that will not be
detected and will not produce a positive result for the category
of drugs specified above-lists to be provided with quote;
**(Refer to Exhibit 3 – Drug Cross Reaction)**                           _x_    ____

e.  The on site test strips must have an accuracy rate of at least
95% as compared to GC/MS results and documentation must be
presented with proposal;
**(Refer to Exhibit 4 – Accuracy Specifications)**                       _x_    ____

f.  The accuracy rate must not change due collection site elevation/
altitude or humidity levels                                              _x_    ____

g.  The contractor product must have participated in a well regarded
third party study for accuracy and contractor will provide results
with proposal; **(Refer to Exhibit 5 – Third Party Study)**             _x_    ____

### IV.    *Support*

a.  The Contractor must provide 24 hours/day, seven days/week
technical assistance at no additional cost;
**(Refer to Exhibit 6 – Client Support)**                                _x_    ____

b.  The product being offered must not be sold over the counter
or over the internet                                                     _x_    ____

c.  The contractor must provide subject matter expert testimony
upon request from the BOP Contracting Officer;
**(Refer to Exhibit 7 – Expert Witness Credentials)**                    _x_    ____

### V.    *Comparison Testing:*

Nothing required from the contractor under this category



10151 Barnes Canyon Road
San Diego, CA 92121 USA
TOLL FREE (888) 635-5840
FAX (858) 635-5843
TEL (858) 643-5555
www.phamatech.com

**PHAMATECH**

February 16, 2007

**VIA: Fax and Overnight**

Jan R. Johns
Contracting Officer
Federal Bureau of Prisons
Acquisitions Management Section
320 First Street, N.W. Room 5006
Washington D.C. 20534

RE: Clarification to Quote RFQ-NAS-0021-2007 – On Site Urine Test Cups

Dear Ms. Johns:

The following represents our responses for clarifications per your letter dated February 15, 2007.

*1. Yes, the desiccant will be placed in the sealed bag and not in the cup. Since we are the manufacturers of the device, we can place it wherever the BOP department sees fit.*

*2. Yes, that's correct. The ID#, Date and Donor Initials will not appear on the cup. The identification label on the cup is an option that may assist in identifying donors at a later time if necessary.*

*3. Yes, that's correct all the information on the peel-off security label will be provided as indicated, if that's what the BOP department desires. Or we can custom make any peel off label to fit the needs of the BOP department.*

*4. The result ready indicator will turn fully red within five minutes and the result expired indicator will turn completely red after 30 minutes, per BOP bid specifications. Please note that all test results will be ready within 2 minutes, however, we recommend that end users wait until the result ready indicator turns completely red to confirm any preliminary presumptive positives.*

*5. The chain of custody form submitted with the BOP bid was strictly a prototype. We can easily change who will get the original copy of the Chain of Custody. If the BOP department desires the original copy, then the BOP Department will appear at the bottom of the original copy. (see attached revised copy).*

*6. Client support means in person, via telephone, Internet, CD training, etc. The BOP department will have the capability to page or call someone 24 hours a day 7 days a week. Additionally, the BOP department will have full access to our chief toxicologist and our laboratory manager. Phamatech will have at least two full time employees to strictly handle the BOP department's needs.*

*7. Training CDs will be provided to each institution, Regional Offices and Central Office. We will send a CD that is currently in use for a similar product that can be tailor made to fit the BOP department's needs. A sample CD will be in your office by 19/Feb/07 at 10:30 am.*

Exhibit E, 1 of 2

SECTION: A

### A.16 52.224-1  PRIVACY ACT NOTIFICATION (APR 1984)

The Contractor will be required to design, develop, or operate a system of records on individuals, to accomplish an agency function subject to the Privacy Act of 1974, Public Law 93-579, December 31, 1974 (5 U.S.C. 552a) and applicable agency regulations.  Violation of the Act may involve the imposition of criminal penalties.

[End of Clause]

### A.17 52.224-2  PRIVACY ACT (APR 1984)

(a) The Contractor agrees to--

    (1) Comply with the Privacy Act of 1974 (the Act) and the agency rules and regulations issued under the Act in the design, development, or operation of any system of records on individuals to accomplish an agency function when the contract specifically identifies--

        (i)   The systems of records; and

        (ii)  The design, development, or operation work that the contractor is to perform;

    (2) Include the Privacy Act notification contained in this contract in every solicitation and resulting subcontract and in every subcontract awarded without a solicitation, when the work statement in the proposed subcontract requires the redesign, development, or operation of a system of records on individuals that is subject to the Act; and

    (3) Include this clause, including this subparagraph (3), in all subcontracts awarded under this contract which requires the design, development, or operation of such a system of records.

(b) In the event of violations of the Act, a civil action may be brought against the agency involved when the violation concerns the design, development, or operation of a system of records on individuals to accomplish an agency function, and criminal penalties may be imposed upon the officers or employees of the agency when the violation concerns the operation of a system of records on individuals to accomplish an agency function.  For purposes of the Act, when the contract is for the operation of a system of records on individuals to accomplish an agency function, the Contractor and any employee of the Contractor is considered to be an employee of the agency.

(c) (1) "Operation of a system of records," as used in this clause, means performance of any of the activities associated with maintaining the system of records, including the collection, use, and dissemination of records.

    (2) "Record," as used in this clause, means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, education, financial transactions, medical history, and criminal or employment history and that contains the person's name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a fingerprint or voiceprint or a photograph.

Except for "No Test Reason," " Test Results," and "Drugs Detected," all data will be obtained from the Chain of Custody form.

X.    **Subject Matter Expert Testimony:**

The contractor will be required to provide subject matter expert testimony when required to address such issues as chain of custody, testing methodologies, and test results. The offer must include the cost of this requirement.

Reimbursement for travel expenses authorized in providing expert witness testimony will be consistent with Federal Travel Regulations. Any travel must have the prior approval of the FBOP Contract Officer's Technical Representative (COTR).

XI.    **"No Test" Criteria**

The contractor will not perform testing on the following specimens submitted:

*    Specimens with a tampered seal  [the tamper-resistant seal must be intact for testing to be performed]

*    Specimens with tampered resistant seals not initialed by both the collector and donor and dated  [tamper-resistant seals must be initialed and dated for testing to be performed]

XII.   **Definitions:**

| | | |
|---|---|---|
| ng/ml | = | nanogram (1/1/,000,000,000 of a gram) per milliliter |
| ±/ml | = | micrograms (1/1,000,000 of a gram) per milliliter |
| EMIT | = | Enzyme Multiplied Immunoassay Technique |
| TLC | = | Thin Layer Chromatography |
| HPTLC | = | High Performance Thin Layer Chromatography |
| GC | = | Gas Chromatography |
| GC/MS | = | Chromatography/Mass Spectrometry |

8

Case 1:06-cv-01673-RWR    Document 31-2    Filed 08/15/2008    Page 72 of 72

Exhibit F, 1 of 1

## TABLE OF CONTENTS

**Solicitation/Contract/Order for Commercial Items**

**Statement of Work (SOW)**

**Exhibit 1** – 510K Clearance

**Exhibit 2** – Chain of Custody Sample BOP's Attachment A preprinted on back

**Exhibit 3** – Drug Cross Reaction Chart

**Exhibit 4** – Accuracy Summary (see Third Party Studies for details)

**Exhibit 5** – Third Party Studies

**Exhibit 6** – Client Support

**Exhibit 7** – Expert Witness Credentials

**Exhibit 8** – ISO Certificate

**Exhibit 9** – Past Performance (Using BOP's Attachment B form)

**Exhibit 10** – BOP's original SOW