RECEIVED

JUL - 3 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

REC ︙ ED

JUL - ᵕ 2008

NANCY **MAYER** ⋯ N, CLERK
**U.S.** DISTRICT COURT

ANTHONY D. RAY,                    )
                                   )
      Plaintiff,                   )
                                   )
    -vs-                           )    Case No. 06-01673 (RWR)
                                   )
FEDERAL BUREAU OF PRISONS,         )
                                   )
      Defendant.                   )

---

### PLAINTIFF'S MOTION FOR LEAVE TO FILE INSTANTER
### THE ACCOMPANYING MOTION AND PLEADINGS IN OPPOSITION
### TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    NOW COMES the Plaintiff, Anthony D. Ray, pro se, and respect-
fully requests this Honorable Court to grant him leave to file
instanter the accompanying motion for an order authorizing discovery,
amended declaration in opposition to Defendant's motion for
summary judgment and statement of disputed/unresolved factual
issues precluding summary judgment in Defendant's favor.  In
support of this motion Plaintiff states:

    1.  By order of the Court, a motion made by Plaintiff for
leave and allowance of time to file supplemental pleadings in
opposition to Defendant's reply brief/renewed motion for summary
judgment, up to and including June 5, 2008, was granted.

    2.  When I asked the Court for an allowance of time in which
to file supplemental pleadings, I did not fully appreciate the
extent of the research that would be required to identify arguably
meritorious legal and factual grounds upon which to base opposition
to Defendant's summary judgment motion and other pleadings,

or the time it would take to draft papers presenting the opposing factual and legal grounds.

3.  I also did not anticipate that the prison law library's normal operating hours would be canceled or reduced on a significant number of days in May 2008, as happened.

4.  Additionally, the limited number of typewriters available for legal document preparation at FCI Cumberland (six machines available to service an inmate population of 1200-plus) is an impediment to timely document preparation and filing.

5.  Although I succeeded in filing a Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary judgment on June 5, 2008, the combination of factors noted in the paragraphs above caused the completion of the accompanying discovery motion and other pleadings to be delayed.  Despite very diligent effors, the time granted for filing supplemental opposition to Defendant's summary judgment motion proved to be insufficient for the pro se Plaintiff to accomplish that task.

6.  This Court has discretion under Fed.R.Civ.P. 6(b)(2) to grant Plaintiff the relief requested by this motion.

7.  The Defendant will not be prejudiced by the Court's granting of this motion.  Federal district courts routinely grant Government requests for relief sought in this motion (see attached Exhibit 1).

WHEREFORE, Plaintiff prays the Court will grant the instant motion, and give due consideration to the accompanying discovery

-2-

motion and other pleadings in passing on Defendant's motion for summary judgment.

Pursuant to 28 USC § 1746, I declare under the penalty of perjury that the foregoing statements are true and correct tot he best of my knowledge, information and belief.

Respectfully submitted,

June 24th, 2008

Anthony Ray
Reg. No. 04077-000
Federal Correctional Institution
P.O. Box 1000
Cumberland, MD 21501-1000

CERTIFICATE OF SERVICE

I hereby certify that on this 24th, day of June, 2008, I caused a true and correct copy of the foregoing motion to the attorneys for the Defendant, by depositing same in a receptacle for outgoing inmate mail, with first class postage prepaid and addressed to:

John G. Interrante
Assistant U.S. Attorney
555 Fourth Street, NW
Washington, D.C. 20530

Anthony Ray

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois — CM/ECF LIVE, Ver 3.0
### Eastern Division

United States of America

                       Plaintiff,

v.

                                     Case No.: 1:07-cv-06409

Edward Lee Jackson Jr

                       Defendant.

Case No.: 1:07-cv-06409
Honorable Charles P. Kocoras

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, January 28, 2008:

     MINUTE entry before Judge Charles P. Kocoras :Government's motion [8] for leave to file instanter response to Edward Lee Jackson's 2255 Petition is granted. Hearing on said motion for leave to file instanter, set for 1/29/2008, is stricken. Defendant's reply is due 2/29/2008. The Court will rule by mail. Mailed notice(sct, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information

For scheduled events, motion practice, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO. 07 C 6409 |
| v. | ) | (96 CR 815) |
| | ) | |
| EDWARD LEE JACKSON | ) | Hon. Charles R. Kocoras |
| | ) | Judge |

### GOVERNMENT'S MOTION FOR LEAVE TO FILE *INSTANTER* RESPONSE TO EDWARD LEE JACKSON'S 2255 PETITION

Now comes the United States of America, through its attorney, Patrick J. Fitzgerald, United

States Attorney for the Northern District of Illinois, and respectfully moves for leave to file *instanter*

the government's response to the Section 2255 Petition of Edward Lee Jackson.

This response was due on January 7, 2008. The under-signed ausa had set aside the two

holiday weeks in which to prepare this and two other Section 2255 responses. The undersigned ausa

was ill and out of the office for an extended period of time, including the two holiday weeks, and

unable to prepare this response.

Wherefore the United States of America respectfully requests leave to file *instanter* the

government's response to the Section 2255 Petition of Edward Lee Jackson.

Respectfully Submitted,
**PATRICK J. FITZGERALD**
United States Attorney

JANUARY 22, 2008          By:          _____

**BRIAN PATRICK NETOLS**
Assistant U.S. Attorney
312-353-4128

RECEIVED

JUL - 3 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANTHONY D. RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil No. 06-1673 (RWR) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>PLAINTIFF'S MOTION FOR AN ORDER
AUTHORIZING COMMENCEMENT OF DISCOVERY</u>

NOW COMES the Plaintiff, Anthony D. Ray, pro se, and respectfully moves this Honorable Court to enter an Order authorizing commencement of discovery in the action captioned above. In support of granting the instant motion, Plaintiff refers the Court to his Memorandum of Points and Authorities annexed hereto. Petitioner further requests that this motion be scheduled for hearing on July 10, 2008, or as soon thereafter as is practible.

Respectfully submitted

June **24th**, 2008

Anthony Ray

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY D. RAY,                       )
                                      )
          Plaintiff,                  )
                                      )
     -vs-                             )     Civil No. 06-1673 (RWR)
                                      )
FEDERAL BUREAU OF PRISONS,            )
                                      )
          Defendant.                  )

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR AN ORDER AUTHORIZING COMMENCEMENT OF DISCOVERY

Background

This is an action under the Freedom of Information Act
("FOIA"), 5 USC § 552.  The Plaintiff, Anthony Ray, a prisoner
who is proceeding pro se, brought the lawsuit to compel disclosure
of records and informaiton in the files of the Defendant, Federal
Bureau of Prisons ("BOP").  The Complaint also requests declaratory
and injunctive relief, for Defendant's alleged willful failure to
comply with FOIA "response" requirements, and seeks costs of
litigation.

The Defendant has filed a motion for summary judgment
and support supporting papers claiming that: BOP has produced
all records and information in its files that is responsive to
Plaintiff's FOIA requests; there are no material issues of fact
in dispute; BOP is entitled to judgment in its favor as a matter
of law; and the Complaint should be dismissed as moot.  Plaintiff
responded to Defendant's summary judgment motion by filing
a declaration in Opposition to Defendant's Motion for Summary

Judgment ("Plaintiff's Declaration") and a Statement of Disputed/
Unresolved Factual Issues Precluding Summary Judgment in Defendant's
Favor ("Plaintiff's Statement").  Together, the aforesaid responses
may be construed to allege the existance of disputed issues of
material fact as to: whether BOP's search and disclosure obligations
under FOIA had been satisfied; whether BOP followed a practice and
custom of delaying response to prisoner FOIA requests unless and
until a lawsuit is filed; whether BOP's withholding of 252 pages,
initially identified as responsive, was proper.  Plaintiff's
Declaration may also be read to state that, in order to make the
showing necessary to successfully oppose Defendant's summary
judgment motion, an opportunity to conduct discovery was required.
See Plaintiff's Declaration at ¶ 18.

Plaintiff, thereafter, served two discovery requests on
Defendant which went unanswered.  Plaintiff moved the Court to
compel Defendant to provide discovery requested.  The Court denied
Plaintiff's motion to compel discovery without prejudice, and
ordered that discovery not be conducted unless and until authorized
by the Court.  Nevertheless, Plaintiff's initial responses to
Defendant's summary judgment motion and papers resulted in a
concession that responsive records had not been released.  After
making some supplemental disclosures, Defendant has renewed
the request for summary judgment in its favor and dismissal of
the Complaint.  For the reasons set forth below, the Court should
enter an order authorizing Plaintiff's commencement of discovery

and deny or defer disposition of the summary judgment motion
until Plaintiff's discovery is completed.

Argument

I.  The Court Should Enter An Order Authorizing Plaintiff
    To Commence Discovery Because The Records And Other
    Evidence That Are Sought Through Discovery Are Relevant
    To The Subject Matter Of This Action And Needed To
    Oppose Defendant's Motion For Summary Judgment.

Ordinarily, a grant of summary judgment is appropirate only

after the non-moving party has been afforded an adequate opportunity

for discovery. Celotex Corp. v. Catrett, 477 US 317, 322 (1986)

If a party opposing a motion a motion for summary judgment shows

by affidavit that, for specified reasons, it cannot present

facts essential to justify it opposition, the court may deny the

motion, order a continuance to enable affidavits to be obtained,

depositions to be taken, or other discovery to be undertaken, or

issue any other just order. Fed.R.Civ.P. 56(f). A judge's

function at the summary judgemnt stage is not himself to weigh

the evidence and determine the truth of the matter, but to

determine whether there is a genuine issue for trial; a genuine

factual issue is one that may reasonably be resolved in favor

of either party. Anderson v. Liberty Lobby, Inc., 477 US 242,

249-50 (1986).

The genuine issues of disputed material fact in this case include:

1.  Whether the BOP's Failure to provide any response to Plaintiff's FOIA request before this action was filed was the result of an unlawful practice and custom (as Plaintiff contends), or an unintended processing error (as BOP alleges).

2.  Whether the search conducted by BOP for records responsive to Plaintiff's FOIA request was reasonably calculated to uncover information pertaining to the cross-reactivity of dental anesthetic(s) Articaine/Septocaine that was reasonably described in said FOIA request. (Plaintiff contends, and the record reflects, that BOP did not tailor its searches to find such information.)

3.  Whether 252 pages of documents withheld by BOP contain non-exempt material that is responsive to Plaintiff's FOIA request. (Plaintiff contends that at least some of the withheld documents are responsive to his FOIA request - that is, within its scope.)

4.  Whether BOP improperly withheld non-exempt responsive records found during supplemental search for National Toxocology Laboratory, Inc's contract. (Plaintiff contends responsive material was withheld.)

5.  Whether BOP otherwise failed to satisfy its search and disclosure obligations under FOIA with respect to the requests of Plaintiff for inspection. (Plaintiff contends that BOP has not.)

And, although there is evidence on the record from which the existance of genuine dispute regarding these issues may be inferred,[1] evidence needed to prove Plaintiff's version of the facts

---

[1]  For example, records released by BOP suggest the existance of other responsive material for which no further searches were conducted; records released by BOP suggest that 252 pages of records withheld by BOP include a "Third Party Study" and an "Accuracy Summary" that are within the scope of Plaintiff's FOIA request; BOP's allegation that the "D.C. [BOP] office became aware of the FOIA request [only after] the Plaintiff filed this civil action" is contradicted by the record, including evidence that a copy of the FOIA request was forwarded to BOP's D.C. office by the Justice Department's Office of Information and Privacy after an appeal was made by Plaintiff to that office regarding BOP's failure to respond to the original request-letter. See Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Amended Declaration in Opposition to Defendant's Motion for Summary Judgment.

-4-

is in the exclusive knowledge and control of the Defendant, BOP.
See Slagle v. United States, 228 F2d 673 (5thCir.1956) (holding
that exclusive knowledge of moving party is circumstance univer-
sally considered as giving party opposing motion for summary
judgment peculiar claim to delay sufficient for orderly discovery
and development of facts); accord, Kolton v. Halpern, 260 F2d 590
(3rdCir. 1958); Vivid Technologies, Inc. v. American Science
& Engineering, Inc., 200 F3d 795 (Fed.Cir.1999); Ingle ex rel.
Estate of Ingle v. Yelton, 439 F3d 191 (4thCir.2006).  See also,
Swan View Coalition v. Department of Agriculture, 39 FSupp2d 42,
45 (D.D.C.1999) (allowing discovery to go forth upon claim that
a g e n c y   had policy or practice of not responding to FOIA
requests before deciding defendant's summary judgment motion).

The evidentiary material Plaintiff will seek through discovey,
if granted, and which is relevant to the summary judgment motion's
determination, include: records and information that will shed
light on who and what caused the "processing error" which BOP
alleges was responsible for its failure to respond to the FOIA
request before Plaintiff was forced to pay a $350 filing fee to
obtain one; records and information from which it may be determined
how many prisoner FOIA requests receive no response from BOP
unless and until a lawsuit to compel disclosure is filed; documents
and information which identify the personnel and procedures
involved in handling FOIA requests received by BOP.  Plaintiff
expects the foregoing discovery to produce, or lead to, evidence

-5-

from which a factfinder could conclude that BOP employees have
followed a practice and custom of withholding response to prisoner
FOIA requests, contrary to statute, unless and until a lawsuit
is filed. Plaintiff also seeks the following through discovery:
a description of BOP's system of records that is sufficient to
enable him to meaningfully challenge the reasonableness of BOP's
failure to search additional files for material responsive to
the FOIA request; the identities, job titles and experience of
the BOP employees who made searches for material responsive to
FOIA request; reasonably detailed, non-conclusory description of
of the 252 pages of Phamatech, Inc.'s contract documents concededly
withheld from Plaintiff by BOP; information from which it may
be determined whether the 63 pages of National Toxocology Labora-
tory's contract uncovered in the course supplemental search for
responsive records comprised the entire NTL contract file, and/or
whether BOP withheld NTL documents determined to be non-responsive,
as was the case with the Phamatech contract documents. The
discovery tools Plaintiff will utilize are Requests for Admissions,
Requests for Production of Documents and Interrogatories.

     In the absence of some opportunity for discovery of material
facts in the exclusive knowledge and control of the Defendant,
Plaintiff cannot affirmatively show the existance of genuine
issues necessary to defeat the motion for summary judgment in
Defendant's favor. See <u>Resolution Trust Corp. v. North Bridge
Assocs.</u>, 22 F3d 1198 (1stCir.1994) (holding district courts

should construe motions that invoke FRCP 56(f) generously, holding parties to rule's spirit rather than its letter).

## Conclusion

For the foregoing reasons, this Court should deny Defendant's motion for summary judgment, or defer decision thereon, and grant Plaintiff permission to conduct discovery to develop relevant facts.

Pursuant to 28 USC § 1746, I declare under the penalty of perjury that all material factual statements in the foregoing are true and correct to the best of my knowledge, information and belief.

Respectfully submitted,

June 24th 2008

Anthony Ray
Reg. No. 04077-000
Federal Correctional Institution
P.O. Box 1000
Cumberland, MD 21501-1000

-7-

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2008, I caused a true and correct copy of the foregoing Memorandum in Support & Motion for Authorization to Conduct Discovery was served on the attorneys for the Defendant, by depositing same in a receptacle for outgoing inmate mail, with first class postage prepaid and addressed to:

John G. Interrante
Assistant U.S. Attorney
555 Fourth Street, NW
Washington, D.C. 20530

Anthony Ray
Anthony Ray

-8-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY D. RAY,                )
                               )
            Plaintiff,         )
                               )
      -vs-                     )    Civil No. 06-1673 (RWR)
                               )
FEDERAL BUREAU OF PRISONS,     )
                               )
            Defendant.         )

PLAINTIFF'S AMENDED DECLARATION IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN DISPUTE

    I, Anthony D. Ray, do hereby declare and state, under penalty of perjury,

that:

    1.  I am the Plaintiff in the above-captioned action which seeks declaratory

and injunctive relief and costs of litigation for the denial of access to public

records and other violations of the Freedom of Information Act ("FOIA") by the

Defendant, Bureau of Prisons.

    2.  The FOIA is a statute governing the release of government records.

In general, FOIA provides that any person has a right, enforceable in court,

to obtain access to federal agency records (or portions of them) except to the

extent that such records are protected from public disclosure by one of nine

exemptions or by one of three special law enforcement record exclusions.

    3.  The BOP is a federal agency subject to FOIA.

    4.  I am a prisoner in the custody of the BOP under a judgment of the

D.C. Superior Court.

    5.  On or about November 6, 2005, I underwent a dental procedure in

which a local anesthetic was administered.  I believe the anesthetic is known

as Articaine and/or Septocaine.  See attached Exhibit A (Memo of Russell Byrd).

6.  On November 9, 2005, BOP collected a urine sample from me that is alleged to have tested positive for cocaine (or its metabolite, Benzoylecgonine). As a result, I was charged with using an unprescribed (illegal) drug.

7.  I am 41 years old and have never used cocaine or any other illegal drug in my life.

8.  During more than 17 years in BOP custody, I have submitted in the neighborhood of 50 urine samples for testing; of these, only the sample submitted on November 9, 2005, tested positive.

9.  A disciplinary hearing was held and, despite my protests of innocence, concluded with the finding that I was guilty of using cocaine, based on the testing laboratory's report.

10.  Based on the finding that I used cocaine, several sanctions were imposed upon me including: 20 days in Disciplinary Segregation; forfeiture of 60 days Statutory Good Time; loss of visiting privileges for one year.

11.  Presumably, the finding that I used cocaine during incarceration will adversely affect future decisions respecting my suitability for release on parole.

12.  Seeking evidence to support my claim of innocence in administrative appeals of the disciplinary proceedings, on January 13, 2006, I mailed a request for disclosure of certain records and information, pursuant to FOIA, to BOP's Central Office.

13.  The scope of my FOIA request to BOP is a genuine issue of disputed material fact in this case.  The Defendant has represented to the Court that

-2-

the FOIA request was limited to "a copy of all records created by the Bureau
of Prisons (BOP) in regards to the National Toxicology Laboratories, Inc. (NTL)
urine specimen #B01652926;

a copy of the contract between the BOP and NTL; a copy of any Operations Memoranda
or policies regarding urine analysis ; and the names of NTL personnel who
conducted the urine test". (Memorandum of Points and Authorities in Support
of Defendant's Motion for Summary Judgment ("Defendant's Memo") at 2; Defendant's
Amended Statement of Material Facts as To Which There Is No Genuine Issue ("ASFNGI")
at ¶ 6; Amended Declaration of Wilson J. Moorer ("Moorer Decl. II") at ¶ 4.)

14. I aver, and the record reflects, that my FOIA request describes records
and information sought in addition to what is alleged by Defendant, including:
records and information pertaining to the potential of Articaine and/or Septocaine
to cause a false positive urine test result for cocaine; "chain of custody
records";"ledgers kept by respective custodians"; "Operations Memoranda or other
documents which set forth procedure, protocol, standards or guidelines established
to ensure the reliability and accuracy of urine analysis." (Plaintiff's FOIA
Request, appended to Complaint as Exh. 1.) What Defendant represents to the
Court as directly quoted from the FOIA Request-letter is, in fact, a paraphrase
which makes its scope appear narrower than intended.

15. The scope of my FOIA Request is material to the question whether
BOP has satisfied its obligations under FOIA to conduct an adequate search
for all relevant materials and to release them.

16. BOP failed to respond to my FOIA Request-letter within 20 days, as
is required by the statute.

17. On April 29, 2006, I mailed a letter to the Department of Justice's

-3-

Office of Information and Privacy ("OIP"), appealing the BOP's failure to respond                  to my FOIA Request and/or disclose responsive material. A copy of my FOIA Request-letter was enclosed with the OIP appeal-letter.

18.  The OIP responded to my April 29, 2006 appeal-letter stating, "As no adverse determination has yet been made regarding your records request, there is no action for this Office to consider on appeal.  The FOIA itself contemplates judicial review, rather than an administrative appeal, when an agency has failed to respond to a request within the statutory time limits. **We have forwarded your letter to the BOP."**  (emphasis added)

19.  Despite having received a copy of my FOIA Request-letter from OIP, BOP again failed to provide a response within 20 days thereof.

20.  Thereafter, I mailed to this Court my original FOIA Complaint in this case; it was filed on September 26, 2006, and asked for a declaratory judgment, an order requiring the requested records be disclosed, an injunction to prohibit   BOP from continuing an unlawful practice, and the costs of filing and prosecuting the lawsuit.  (See Complaint at 3-4.)

21.  After the Complaint was filed, the case languished on this Court's docket for close to one year before an order for service of process was entered. Defendant was served by the U.S. Marshal's Service on July, 25, 2007.

22.  On or about October 3, 2007, prior to Defendant's filing an answer, the Complaint was amended to further allege that the failure to provide a timely response to my FOIA Request-letter resulted from a BOP practice and custom of ignoring prisoner FOIA requests and/or delaying response to such requests unless and until the prisoner files a lawsuit.  The "practice and custom" allegation is based on information from other federal inmates who

-4-

submitted FOIA requests to BOP that were not answered.

23. Defendant subsequently responded to my FOIA Request and Complaint by releasing 97 pages of materials and by filing a motion for summary judgment with supporting papers.

24. Whether BOP employees follow a practice and custom of withholding responses to prisoner requests for records, in violation of FOIA, is a material fact put at issue by the Amended Complain.

25. The declaration and other papers filed by Defendant in support its summary judgment motion do not deny the Complaint's allegation of an unlawful practice and custom.

26. Insofar as BOP states that its months long delay in responding to my records request was due to "processing error" (Moorer Decl. II, at ¶ 5) and that BOP's Central Office only "became aware of the FOIA request when the Plaintiff filed this civil action" (id.), I dispute these assertions and note that they fail to establish the absence of a genuine issue as to the reasons BOP failed to respond to my request for records until this action was filed.

27. I also note that the BOP Declaration's statements in regard to when it became aware of my FOIA Request are in obvious contradiction. The first sentence of paragraph 5 of Moorer's Declaration states that my records request was "initially received at the BOP's FOIA Office, Washington, D.C. [but was erroneously] forwarded to the BOP's Mid-Atlantic Regional Office (MARO) for processing; implicitly, then, at least one Central Office FOIA employee, and possibly more, was aware of my request for records before the lawsuit was filed, contrary to Moorer's statement in the closing sentence of paragraph 5. The Moorer

Declaration does not, therefore, foreclose the possibility that the BOP emloyee
who initially received my FOIA Request is the same employee who was the initial
recipient of my FOIA lawsuit, and that he/she acted at all times in conformance
with a practice and custom of withholding response to prisoner FOIA requests
unless and until a lawsuit is filed.  Between the contradictory first and
last sentence of  Moorer's Decl. II,   paragraph 5, there is no attempt to explain
how prisoner FOIA requests are normally processed upon receipt by BOP Central
office, no indication as to who or what caused my records request to be erron-
eously forwarded to MARO.  All that is offered are conclusory statements that
"BOP's FOIA Data Base shows the request was received by the MARO [and] logged
in" (id.), and "MARO returned the request to...Washington, D.C. for further
processing [but] it cannot be determined if the request was ever received by
the...D.C. office"; these statements are not properly supported by print-outs
from the Data Base or copies of logs referred to, as is required by Fed.R.Civ.P.
56(e)(1) (i.e., "If a paper or part of a paper is referred to in an affidavit,
a sworn or certified copy must be attached to or served with the affidavit.")
In sum, the Wood Declaration fails to provide the kind of specific information
upon which a court could find that summary judgment in favor of BOP is appropriate
with respect to the Complaint's practice and custom claim.

    28.  To the extent that Defendant argues in its summary judgment papers
that the Court lacks jurisdiction to grant declaratory and injunctive relief
for the Complaint's practice and custom claims, that argument is without
merit.  See Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant's Motion for Summary Judgment, Reply Brief and Supporting Papers
("Plntf's Memo.") at 11-16.  If the allegation is proven, this Court may

grant the relief requested.

29. Prior to BOP's release of the 97 pages of material mentioned in paragraph 23, ante, it had represented, in papers filed with the Court, that it had located 325 pages of records responsive to my disclosure requests. See Declaration of Wilson J. Moorer (filed 9/21/07) at 2. Whether BOP improperly withheld some or all of "252 pages" initially determined to be responsive but not released is a genuine issue of material fact presented by this case because I dispute BOP's contrary retrospective conclusion that none of these records was responsive to my FOIA request. Moorer Decl. II, ¶ 6.

30. BOP alleges that the "252 pages of the contract [documents withheld] consisted of...consumer studies and questionaires filled out by private individuals concerning Phamatech's Test Kits....that was not essential to the basic request of the Plaintiff which was a copy of the...contract." Id. Again, BOP's interpretation of the scope of my records request is unreasonably narrowed. See ¶¶ 13-15, ante. Not only are the 252 withheld pages part and parcel of the Phamatech contract, which arguably should have been released in its entirety without more, but BOP's summary judgment motion and papers do not provide sufficient specific to establish that the alleged "consumer studies" and "questionnaires" contain no information the "reliability and accuracy of urine analysis" (FOIA Request at 1), which I specifically asked for. In fact, the "Table Of Contents" to the Phamatech contract documents indicates that drug test reliability and accuracy are the subjects of at least some of the 252 pages withheld. See Exhibit F, appended to Plaintiff's Memo. (Exhibit 4-Accuracy Summary and Exhibit 5-Third Party Studies are

among the withheld Phamatech documents). Furthermore, as it appears from

the Phamatech table of contents that what BOP characterized as "consumer

studies and questionnaires" are actually authoritative "Third Party Studies"

and an Accuracy Summary, a reasonable person might well question the good

faith of BOP search and disclosure efforts in this case.

31. Insofar as BOP now states that    "Phamatech records found in the

BOP contract file...were non-responsive in their entirety" (ASFNGI at 2 n. 2),

I dispute the statement and it is refuted by the record. The basic objectives

of my FOIA  Request are to obtain information regarding the "reliability and

accuracy of urine analysis in general, and the potential of Articaine and/or

Septocaine to produce a false positive result for cocaine in particular (FOIA

Request at 1-2). Ironically and curiously, thePhamatech documents do contain

information within the scope of my FOIA request; ironic because the information

was released, not as the result of a search reasonably calculated to uncover

all responsive material, but, apparently, as a result of a mistake; curious

because the released documents plainly suggest that an expanded search for

specifically requested information was reasonably required, and other apparently

responsive material was withheld (see ¶ 30, ante). Specifically, the released

Phamatech documents included a "List of Cross-Reactive Substances" (Exhibit C,

appended to Plntf's Memo.), which indicates that some dental anesthetics can

produce a false positive for the presence of cocaine in urnine tests; and a

"Non-Inclusive list of possible cross-reacting substances" (Exhibit B, appended

to Plntf's Memo), which suggests that cross-reactivity information about

Articaine and/or Septocaine might be found in withheld records or other

agency files. Thus, although the Phamatech contract documents are not, per

-8-

se, responsive to my request for a copy of contract between BOP and NTL,
they are responsive to my request for information about the accuracy and
reliability of urine analysis, as well as the cross-reactivity of some medications
and other substances in tests for illicit drugs.

32. BOP knew, or should have known, by the time it released the NTL
contract, that it had not conducted a reasonably adequate search for, nor
rleased all documents and information in its control that is responsive to
my FOIA Request.

33. In sum, the facts and circumstances set forth in paragraphs 29-32,
ante, create substantial doubt whether BOP has satisfied its search and
disclosure obligations with respect to my FOIA Request. Defendant's motion
for summary judgment should not, therefore, be granted.

34. That BOP has failed to disclose information responsive to my FOIA
request may also be inferred from two memorandums released in the package of
records copied from my "Inmate Central File" (ASFNGI at 5; Moorer Decl. II at
8). The Memorandums, dated November 18, 2005 (attached Exhibit B) and November
21, 2005 (attached Exhibt A), indicate that the FCI Cumberland Health Services
Department maintains records or information, that was not disclosed, pertaining
to the cross-reactivity of drugs it prescribes or administers.

35. On or about December 1, 2007, I filed and served Plaintiff's Declaration
in Opposition to Defendant's Motion for Summary Judgment (Plntf's Decl. I)
and Plaintiff's Statement of Disputed/Unresolved Factual Issues Precluding
Entry of Summary Judgment in Defendant's Favor (SDFI). In the declaration
I asserted that BOP was not entitled to summary judgment because, among other
things, if failed to disclose a copy of the NTL contract as requested

-9-

and that the declaration and other papers filed in support of summary judgment
failed to establish the absence of genuine dispute regarding reasons no
response to my FOIA request was provided until I filed the lawsuit (See
Decl. I at 14-17). My list of Disputed/Unresolved Factual Issues included:
(1) "Whether Defendant has, in fact, released all agency records responsive
to Plaintiff's original [FOIA] requests"; (2) "Whether Defendant knowingly and
willfully violated Plaintiff's statutory right to inspection of disclosable
agency records promptly and at the least cost reasonably required"; (3) "Whether
Defendant has followed a practice and custom of ignoring, or delaying response
to, prisoner requests for access to records under FOIA"; (4) "Whether Defendant's
explanation for the delay in responding to Plaintiff's FOIA requests is
supported by the record"; (5) "Whether Plaintiff is entitled to jdugment
against Defendant for unreasonable delay in responding to Plaintiff's request
for disclosure of agency records"; (6) "Whether Plaintiff should be awarded
his costs incurred in bringing a lawsuit in order to obtain records he was
entitled to have provided promptly upon request and at least cost reasonably
required" (SDUFI at 1-2).

36. BOP characterises the declaration and statement, referred to in
preceding paragraph, as presenting "six...legal disputes" and "one disputed
fact, i.e., [that the contract described in my FOIA Request was not disclosed]".
I dispute the validity of such characterization. The disputed/unresolved issues
numbered (1) thru (3) are plainly questions of material fact, not legal issues.
Paragraphs 14-17 of my declaration give reasons why Defendant's summary
judgment papers fail to establish the absence of a genuine dispute as to the
unlawful practice and custom alleged in the Complaint, adequacy of the search

-10-

conducted by BOP for responsive records, propriety of withholdings acknowledged on the record, and the existance of other unreleased responsive material.

37. What BOP is really asking the Court to do in this case is to deny my pleadings liberal construction to do justice and to grant summary judgment in its favor because my papers do not meet the standards to which attorneys are held.

38. The Moorer declaration offered in support of the motion for summary judgment do not describe BOP's recordkeeping system; it also fails to indicate who searched for records responsive to my FOIA Reqeust and what that persons qualifications are. Moorer does not state that he conducted the searches made. These omissions inhibit my ability to further contest BOP's allegations that an adequate search was conducted and all responsive non-exempt records were disclosed (Reply Brief at 2-3). See also Plntf's Memo. at 9-11.

39. After I filed my "Declaration" and "Statement" mentioned above, I I served on Defendant two discovery requests, thru which I sought evidence to support my claims of entitlement to relief - evidence that is in the exclusive knowledge and control of BOP. Among other things, I sought to discover how  and by who FOIA requests received at the Central Office in D.C. are normally processed; who and what caused the "processing error" that resulted in my FOIA Request being forwarded to MARO; what, if any, requirements BOP employees are under to log FOIA correspondence when received from the public or other agencies; and whether BOP maintains any files containing information about the cross-reactivity of Articaine and/or Septocaine (see Plaintiff's Request for Admissions and Plaintiff's First Interrogatories and Requests for Production of Documents). Defendant refused to respond

-11-

to my requests for discovery and I subsequently filed with the Court a motion to compel a response. By order dated March 31, 2008, the Court denied my motion to compel discovery without prejudice.

40. Although I believe the record of the case to date precludes the entry of summary judgment in Defendants favor and dismissal of the case, it will be impossible for me to prove entitlement to relief on the genuine issues in the absence of an opportunity to obtain discovery from the Defendant. In any event, I should be afforded some opportunity for discovery before summary judgment for defendant is granted.

Pursuant to 28 USC § 1746, I declare under the penalty of perjury that the foregoing is true and correct based on personal knowledge, information and belief.

June 24th, 2008

Anthony Ray
Reg. No. 04077-000
Federal Correctional Institution
P.O. Box 1000
Cumberland, MD 21501-1000

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2008, a true and correct copy of the foregoing, Amended Declaration In Opposition to Defendant's Motion for Summary Judgment and Statement of Genuine Issues of Material Fact in Dispute, was mailed to the attorneys for the Defendant, with first class postage

postage prepaid and addressed to:

    John G. Interrante
    Assistant U.S. Attorney
    Civil Division, Room E-4806
    555 Fourth Street, N.W.
    Washington, D.C. 20530

                            _Anthony Ray_
                            Anthony Ray

02/... Case 1:06-cv-01673-RWR   Document 14-7   Filed 10/05/2007   Page 11 of 24   15/17
James D. Sterner - Articaine   Case 1:06-cv-01673-RWR   Document 32-4   Filed 07/03/2008   Page 14 of 15

Page 1

| | | |
|---|---|---|
| **From:** | Russell L. Byrd | **EXHIBIT A** |
| **To:** | Deremer, James D. | |
| **Date:** | 11/21/2006 11:20:23 AM | |
| **Subject:** | Articaine | |

My review of the metabolism and chemical structures of articaine (Septocaine®) and its metabolites
revealed that neither it nor any of its metabolites are structurally similar to cocaine or any of its
metabolites. Therefore, there should not be any false positives for cocaine metabolites from articaine or
its metabolites.

LCDR Russell Byrd, USPHS
Chief Pharmacist
FCI Cumberland
14601 Burbridge Rd SE
Cumberland, MD 20152
rbyrd@bop.gov
301-784-1000 ext-2093/2012
Fax: 301-784-1033



EXHIBIT B



**U.S. Department of Justice**

Federal Bureau of Prisons

_____

*Federal Correctional Institution*
*Cumberland, Maryland 21502*

Date: November 18, 2005

Reply To
Attn Of: D. Deremer
SIS Technician

Subject: Request for Medical Prescription Information
**RAY, Anthony D. #04077-000**

To: Health Services Department

The above referenced inmate provided a urine sample on November 9, 2005, at 6:08 a.m., for testing according to the Federal Bureau of Prisons policy on Urine Surveillance. The National Toxicology Laboratories INC., Bakersfield, CA, advises this specimen (#B01652926), tested positive for **cocaine (Benzoylecgonine)**. Before proceeding with disciplinary action it is necessary to determine if any medication prescribed for this inmate justifies the positive test result. Please review the subject's medical records and indicate below if Health Services staff prescribed any medication that would justify the positive test result.

Thank you in advance, for promptly completing the requested information and returning this memorandum to my attention.

_____

As requested above, I, reviewed the above referenced inmate's medical record and find:

✓ : The inmate was not prescribed any medication that would test positive
for the above stated drug.

_____ : The inmate was prescribed the medication(s) listed below that would
cause a positive urine test result for the above stated drug.
Please list below the prescribed medication(s) justifying the positive
test result.

L. Dudek RN, SLWudeken      RN      11-18-05
Printed Name & Signature      Title      Date
Reviewing and Certifying
Inmate's Medication History