UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY D. RAY,                )
                               )
                Plaintiff,     )
                               )
        -vs-                   )    Civil No. 06-1673 (RWR)
                               )
FEDERAL BUREAU OF PRISONS,     )
                               )
                Defendant.     )

PLAINTIFF'S AMENDED DECLARATION IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN DISPUTE

I, Anthony D. Ray, do hereby declare and state, under penalty of perjury, that:

1.  I am the Plaintiff in the above-captioned action which seeks declaratory and injunctive relief and costs of litigation for the denial of access to public records and other violations of the Freedom of Information Act ("FOIA") by the Defendant, Bureau of Prisons.

2.  The FOIA is a statute governing the release of government records. In general, FOIA provides that any person has a right, enforceable in court, to obtain access to federal agency records (or portions of them) except to the extent that such records are protected from public disclosure by one of nine exemptions or by one of three special law enforcement record exclusions.

3.  The BOP is a federal agency subject to FOIA.

4.  I am a prisoner in the custody of the BOP under a judgment of the D.C. Superior Court.

5.  On or about November 6, 2005, I underwent a dental procedure in which a local anesthetic was administered.  I believe the anesthetic is known

as Articaine and/or Septocaine.  See attached Exhibit A (Memo of Russell Byrd).

6.  On November 9, 2005, BOP collected a urine sample from me that is alleged to have tested positive for cocaine (or its metabolite, Benzoylecgonine).  As a result, I was charged with using an unprescribed (illegal) drug.

7.  I am 41 years old and have never used cocaine or any other illegal drug in my life.

8.  During more than 17 years in BOP custody, I have submitted in the neighborhood of 50 urine samples for testing; of these, only the sample submitted on November 9, 2005, tested positive.

9.  A disciplinary hearing was held and, despite my protests of innocence, concluded with the finding that I was guilty of using cocaine, based on the testing laboratory's report.

10.  Based on the finding that I used cocaine, several sanctions were imposed upon me including: 20 days in Disciplinary Segregation; forfeiture of 60 days Statutory Good Time; loss of visiting privileges for one year.

11.  Presumably, the finding that I used cocaine during incarceration will adversely affect future decisions respecting my suitability for release on parole.

12.  Seeking evidence to support my claim of innocence in administrative appeals of the disciplinary proceedings, on January 13, 2006, I mailed a request for disclosure of certain records and information, pursuant to FOIA, to BOP's Central Office.

13.  The scope of my FOIA request to BOP is a genuine issue of disputed material fact in this case.  The Defendant has represented to the Court that

-2-

the FOIA request was limited to "a copy of all records created by the Bureau
of Prisons (BOP) in regards to the National Toxicology Laboratories, Inc. (NTL)
urine specimen #B01652926;

a copy of the contract between the BOP and NTL; a copy of any Operations Memoranda
or policies regarding urine analysis ; and the names of NTL personnel who
conducted the urine test". (Memorandum of Points and Authorities in Support
of Defendant's Motion for Summary Judgment ("Defendant's Memo") at 2; Defendant's
Amended Statement of Material Facts as To Which There Is No Genuine Issue ("ASFNGI")
at ¶ 6; Amended Declaration of Wilson J. Moorer ("Moorer Decl. II") at ¶ 4.)

14.   I aver, and the record reflects, that my FOIA request describes records
and information sought in addition to what is alleged by Defendant, including:
records and information pertaining to the potential of Articaine and/or Septocaine
to cause a false positive urine test result for cocaine; "chain of custody
records";"ledgers kept by respective custodians"; "Operations Memoranda or other
documents which set forth procedure, protocol, standards or guidelines established
to ensure the reliability and accuracy of urine analysis." (Plaintiff's FOIA
Request, appended to Complaint as Exh. 1.)  What Defendant represents to the
Court as directly quoted from the FOIA Request-letter is, in fact, a paraphrase
which makes its scope appear narrower than intended.

15.   The scope of my FOIA Request is material to the question whether
BOP has satisfied its obligations under FOIA to conduct an adequate search
for all relevant materials and to release them.

16.   BOP failed to respond to my FOIA Request-letter within 20 days, as
is required by the statute.

17.   On April 29, 2006, I mailed a letter to the Department of Justice's

Office of Information and Privacy ("OIP"), appealing the BOP's failure to respond          to my FOIA Request and/or disclose responsive material. A copy of my FOIA Request-letter was enclosed with the OIP appeal-letter.

18. The OIP responded to my April 29, 2006 appeal-letter stating, "As no adverse determination has yet been made regarding your records request, there is no action for this Office to consider on appeal. The FOIA itself contemplates judicial review, rather than an administrative appeal, when an agency has failed to respond to a request within the statutory time limits. **We have forwarded your letter to the BOP.**" (emphasis added)

19. Despite having received a copy of my FOIA Request-letter from OIP, BOP again failed to provide a response within 20 days thereof.

20. Thereafter, I mailed to this Court my original FOIA Complaint in this case; it was filed on September 26, 2006, and asked for a declaratory judgment, an order requiring the requested records be disclosed, an injunction to prohibit    BOP from continuing an unlawful practice, and the costs of filing and prosecuting the lawsuit. (See Complaint at 3-4.)

21. After the Complaint was filed, the case languished on this Court's docket for close to one year before an order for service of process was entered. Defendant was served by the U.S. Marshal's Service on July, 25, 2007.

22. On or about October 3, 2007, prior to Defendant's filing an answer, the Complaint was amended to further allege that the failure to provide a timely response to my FOIA Request-letter resulted from a BOP practice and custom of ignoring prisoner FOIA requests and/or delaying response to such requests unless and until the prisoner files a lawsuit. The "practice and custom" allegation is based on information from other federal inmates who

-4-

submitted FOIA requests to BOP that were not answered.

23.   Defendant subsequently responded to my FOIA Request and Complaint by releasing 97 pages of materials and by filing a motion  for summary judgment with supporting papers.

24.   Whether BOP employees follow a practice and custom of withholding responses to prisoner requests for records, in violation of FOIA, is a material fact put at issue by the Amended Complain.

25.   The declaration and other papers filed by Defendant in support its summary judgment motion  do  not deny the Complaint's allegation of an unlawful practice and custom.

26.   Insofar as BOP states that its months long delay in responding to my records request was due to "processing error" (Moorer Decl. II, at ¶ 5) and that BOP's Central Office only "became aware of the FOIA request when the Plaintiff filed this civil action" (id.), I dispute these assertions and note that they fail to establish the absence of a genuine issue as to the reasons BOP failed to respond to my request for records until this action was filed.

27.   I also note that the BOP Declaration's statements in regard to when it became aware of my FOIA Request are in obvious contradiction.  The first sentence of paragraph 5 of Moorer's Declaration states that my records request was "initially received at the BOP's FOIA Office, Washington, D.C. [but was erroneously] forwarded to the BOP's Mid-Atlantic Regional Office (MARO) for processing; implicitly, then, at least one Central Office FOIA employee, and possibly more, was aware of my request for records before the lawsuit was filed, contrary to Moorer's  statement in the closing sentence of paragraph 5.  The Moorer

Declaration does not, therefore, foreclose the possibility that the BOP emloyee
who initially received my FOIA Request is the same employee who was the initial
recipient of my FOIA lawsuit, and that he/she acted at all times in conformance
with a practice and custom of withholding response to prisoner FOIA requests
unless and until a lawsuit is filed.  Between the contradictory first and
last sentence of Moorer's Decl. II,  paragraph 5, there is no attempt to explain
how prisoner FOIA requests are normally processed upon receipt by BOP Central
office, no indication as to who or what caused my records request to be erron-
eously forwarded to MARO.  All that is offered are conclusory statements that
"BOP's FOIA Data Base shows the request was received by the MARO [and] logged
in" (id.), and "MARO returned the request to...Washington, D.C. for further
processing [but] it cannot be determined if the request was ever received by
the...D.C. office"; these statements are not properly supported by print-outs
from the Data Base or copies of logs referred to, as is required by Fed.R.Civ.P.
56(e)(1) (i.e., "If a paper or part of a paper is referred to in an affidavit,
a sworn or certified copy must be attached to or served with the affidavit.")
In sum, the Wood Declaration fails to provide the kind of specific information
upon which a court could find that summary judgment in favor of BOP is appropriate
with respect to the Complaint's practice and custom claim.

    28.  To the extent that Defendant argues in its summary judgment papers
that the Court lacks jurisdiction to grant declaratory and injunctive relief
for the Complaint's practice and custom claims, that argument is without
merit.  See Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant's Motion for Summary Judgment, Reply Brief and Supporting Papers
("Plntf's Memo.") at 11-16.  If the allegation is proven, this Court may

-6-

grant the relief requested.

29.  Prior to BOP's release of the 97 pages of material mentioned in
paragraph 23, ante, it had represented, in papers filed with the Court, that
it had located 325 pages of records responsive to my disclosure requests.
See Declaration of Wilson J. Moorer (filed 9/21/07) at 2.  Whether BOP
improperly withheld some or all of "252 pages" initially determined to be
responsive but not released is a genuine issue of material fact presented
by this case because I dispute BOP's contrary retrospective conclusion that
none  of these records was responsive to my FOIA request.  Moorer Decl. II,
¶ 6.

30.  BOP  alleges that the "252 pages of the contract [documents withheld]
consisted of...consumer studies and questionaires filled out by private
individuals concerning Phamatech's Test Kits....that was not essential to
the basic request of the Plaintiff which was a copy of the...contract."  Id.
Again, BOP's interpretation of the scope of my records request is unreasonably
narrowed.  See ¶¶ 13-15, ante.  Not only are the 252 withheld pages part and
parcel of the Phamatech contract, which arguably should have been released
in its entirety without more, but BOP's summary judgment motion and papers do
not provide sufficient specific to establish that the alleged "consumer
studies" and "questionnaires" contain no information the "reliability and
accuracy of urine analysis" (FOIA Request at 1), which I specifically asked
for.  In fact, the "Table Of Contents" to the Phamatech contract documents
indicates that drug test reliability and accuracy are the subjects of at
least some of the 252 pages withheld.  See Exhibit F, appended to Plaintiff's
Memo. (Exhibit 4-Accuracy Summary and Exhibit 5-Third Party Studies are

among the withheld Phamatech documents).  Furthermore, as it appears from
the Phamatech table of contents that what BOP characterized as "consumer
studies and questionnaires" are actually authoritative "Third Party Studies"
and an Accuracy Summary, a reasonable person might well question the good
faith of BOP search and disclosure efforts in this case.

31.  Insofar as BOP now states that    "Phamatech records found in the
BOP contract file...were non-responsive in their entirety" (ASFNGI at 2 n. 2),
I dispute the statement and it is refuted by the record.  The basic objectives
of my FOIA  Request are to obtain information regarding the "reliability and
accuracy of urine analysis in general, and the potential of Articaine and/or
Septocaine to produce a false positive result for cocaine in particular (FOIA
Request at 1-2).  Ironically and curiously, thePhamatech documents do contain
information within the scope of my FOIA request; ironic because the information
was released, not as the result of a search reasonably calculated to uncover
all responsive material, but, apparently, as a result of a mistake; curious
because the released documents plainly suggest that an expanded search for
specifically requested information was reasonably required, and other apparently
responsive material was withheld (see ¶ 30, ante).  Specifically, the released
Phamatech documents included a "List of Cross-Reactive Substances" (Exhibit C,
appended to Plntf's Memo.), which indicates that some dental anesthetics can
produce a false positive for the presence of cocaine in urnine tests; and a
"Non-Inclusive list of possible cross-reacting substances" (Exhibit B, appended
to Plntf's Memo), which suggests that cross-reactivity information about
Articaine and/or Septocaine might be found in withheld records or other
agency files.  Thus, although the Phamatech contract documents are not, per

-8-

se, responsive to my request for a copy of contract between BOP and NTL,
they are responsive to my request for information about the accuracy and
reliability of urine analysis, as well as the cross-reactivity of some medications
and other substances in tests for illicit drugs.

32. BOP knew, or should have known, by the time it released the NTL
contract, that it had not conducted a reasonably adequate search for, nor
rleased all documents and information in its control that is responsive to
my FOIA Request.

33. In sum, the facts and circumstances set forth in paragraphs 29-32,
ante, create substantial doubt whether BOP has satisfied its search and
disclosure obligations with respect to my FOIA Request. Defendant's motion
for summary judgment should not, therefore, be granted.

34. That BOP has failed to disclose information responsive to my FOIA
request may also be inferred from two memorandums released in the package of
records copied from my "Inmate Central File" (ASFNGI at 5; Moorer Decl. II at
8). The Memorandums, dated November 18, 2005 (attached Exhibit B) and November
21, 2005 (attached Exhibt A), indicate that the FCI Cumberland Health Services
Department maintains records or information, that was not disclosed, pertaining
to the cross-reactivity of drugs it prescribes or administers.

35. On or about December 1, 2007, I filed and served Plaintiff's Declaration
in Opposition to Defendant's Motion for Summary Judgment (Plntf's Decl. I)
and Plaintiff's Statement of Disputed/Unresolved Factual Issues Precluding
Entry of Summary Judgment in Defendant's Favor (SDFI). In the declaration
I asserted that BOP was not entitled to summary judgment because, among other
things, if failed to disclose a copy of the NTL contract as requested

and that the declaration and other papers filed in support of summary judgment

failed to establish the absence of genuine dispute regarding reasons no

response to my FOIA request was provided until I filed the lawsuit (See

Decl. I at 14-17). My list of Disputed/Unresolved Factual Issues included:

(1) "Whether Defendant has, in fact, released all agency records responsive

to Plaintiff's original [FOIA] requests"; (2) "Whether Defendant knowingly and

willfully violated Plaintiff's statutory right to inspection of disclosable

agency records promptly and at the least cost reasonably required"; (3) "Whether

Defendant has followed a practice and custom of ignoring, or delaying response

to, prisoner requests for access to records under FOIA"; (4) "Whether Defendant's

explanation for the delay in responding to Plaintiff's FOIA requests is

supported by the record"; (5) "Whether Plaintiff is entitled to jdugment

against Defendant for unreasonable delay in responding to Plaintiff's request

for disclosure of agency records"; (6) "Whether Plaintiff should be awarded

his costs incurred in bringing a lawsuit in order to obtain records he was

entitled to have provided promptly upon request and at least cost reasonably

required" (SDUFI at 1-2).

36. BOP characterises the declaration and statement, referred to in

preceding paragraph, as presenting "six...legal disputes" and "one disputed

fact, i.e., [that the contract described in my FOIA Request was not disclosed]".

I dispute the validity of such characterization. The disputed/unresolved issues

numbered (1) thru (3) are plainly questions of material fact, not legal issues.

Paragraphs 14-17 of my declaration give reasons why Defendant's summary

judgment papers fail to establish the absence of a genuine dispute as to the

unlawful practice and custom alleged in the Complaint, adequacy of the search

conducted by BOP for responsive records, propriety of withholdings acknowledged
on the record, and the existance of other unreleased responsive material.

37.  What BOP is really asking the Court to do in this case is to deny
my pleadings liberal construction to do justice and to grant summary judgment
in its favor because my papers do not meet the standards to which attorneys
are held.

38.  The Moorer declaration offered in support of the motion for summary
judgment do not describe BOP's recordkeeping system; it also fails to indicate
who searched for records responsive to my FOIA Reqeust and what that persons
qualifications are.  Moorer does not state that he conducted the searches
made.  These omissions inhibit my ability to further contest BOP's allegations
that an adequate search was conducted and all responsive non-exempt records
were disclosed (Reply Brief at 2-3). See also Plntf's Memo. at 9-11.

39.  After I filed my "Declaration" and "Statement" mentioned above, I
I served on Defendant two discovery requests, thru which I sought evidence
to support my claims of entitlement to relief - evidence that is in the
exclusive knowledge and control of BOP.  Among other things, I sought to
discover how  and by who FOIA requests received at the Central Office in D.C.
are normally processed; who and what caused the "processing error" that
resulted in my FOIA Request being forwarded to MARO; what, if any, requirements
BOP employees are under to log FOIA correspondence when received from the
public or other agencies; and whether BOP maintains any files containing
information about the cross-reactivity of Articaine and/or Septocaine (see
Plaintiff's Request for Admissions and Plaintiff's First Interrogatories
and Requests for Production of Documents).  Defendant refused to respond

to my requests for discovery and I subsequently filed with the Court a motion to compel a response. By order dated March 31, 2008, the Court denied my motion to compel discovery without prejudice.

40. Although I believe the record of the case to date precludes the entry of summary judgment in Defendants favor and dismissal of the case, it will be impossible for me to prove entitlement to relief on the genuine issues in the absence of an opportunity to obtain discovery from the Defendant. In any event, I should be afforded some opportunity for discovery before summary judgment for defendant is granted.

Pursuant to 28 USC § 1746, I declare under the penalty of perjury that the foregoing is true and correct based on personal knowledge, information and belief.

June 24th, 2008

Anthony Ray
Reg. No. 04077-000
Federal Correctional Institution
P.O. Box 1000
Cumberland, MD 21501-1000

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2008, a true and correct copy of the foregoing, Amended Declaration In Opposition to Defendant's Motion for Summary Judgment and Statement of Genuine Issues of Material Fact in Dispute, was mailed to the attorneys for the Defendant, with first class postage

-12-

postage prepaid and addressed to:

> John G. Interrante
> Assistant U.S. Attorney
> Civil Division, Room E-4806
> 555 Fourth Street, N.W.
> Washington, D.C. 20530

Anthony Ray

02/Case 1:06-cv-01673-RWR Document 14-7 A Filed 10/05/2007 Page 11 of 24 15/17
James D. Case 1:06-cv-01673-RWR - Document 34 A Filed 08/11/2008 Page 14 of 15

Page 1

| | | |
|---|---|---|
| **From:** | Russell L. Byrd | **EXHIBIT A** |
| **To:** | Deremer, James D. | |
| **Date:** | 11/21/2006 11:20:23 AM | |
| **Subject:** | Articaine | |

My review of the metabolism and chemical structures of articaine (Septocaine®) and its metabolites revealed that neither it nor any of its metabolites are structurally similar to cocaine or any of its metabolites. Therefore, there should not be any false positives for cocaine metabolites from articaine or its metabolites.

LCDR Russell Byrd, USPHS
Chief Pharmacist
FCI Cumberland
14601 Burbridge Rd SE
Cumberland, MD 20152
rbyrd@bop.gov
301-784-1000 ext-2093/2012
Fax: 301-784-1033





**EXHIBIT B**

**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution*
*Cumberland, Maryland 21502*

Date: November 18, 2005

Reply To
Attn Of: D. Deremer
SIS Technician

Subject: Request for Medical Prescription Information
**RAY, Anthony D. #04077-000**

To: Health Services Department

The above referenced inmate provided a urine sample on November 9, 2005, at 6:08 a.m., for testing according to the Federal Bureau of Prisons policy on Urine Surveillance. The National Toxicology Laboratories INC., Bakersfield, CA, advises this specimen (#B01652926), tested positive for **cocaine (Benzoylecgonine)**. Before proceeding with disciplinary action it is necessary to determine if any medication prescribed for this inmate justifies the positive test result. Please review the subject's medical records and indicate below if Health Services staff prescribed any medication that would justify the positive test result.

Thank you in advance, for promptly completing the requested information and returning this memorandum to my attention.

---

As requested above, I, reviewed the above referenced inmate's medical record and find:

_____✓___: The inmate was not prescribed any medication that would test positive for the above stated drug.

_____: The inmate was prescribed the medication(s) listed below that would cause a positive urine test result for the above stated drug.
Please list below the prescribed medication(s) justifying the positive test result.

L. Dudek RN, S.W. Dudek        RN                11-18-05
Printed Name & Signature              Title              Date
Reviewing and Certifying
Inmate's Medication History