UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTHONY RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1673 (RWR) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Anthony Ray, a federal prisoner, filed this *pro se* complaint under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, against the Bureau of Prisons ("BOP"). BOP's first motion for summary judgment was denied by Order of December 9, 2009, because it had failed to provide sufficient evidence on the search for responsive records and the withholding of "non-responsive" records. *See* Mem. Op. [Dkt. # 38] at 5-7. In addition, BOP had not addressed plaintiff's claim that it systematically delays processing prisoners' FOIA requests. *See id*. at 7. BOP now renews its motion for summary judgment, and Ray moves for partial summary judgment. Also pending is Plaintiff's Motion for Leave to File Additional Pleadings in Response to Defendant's Renewed Motion for Summary Judgment. Upon consideration of the parties' submissions and the relevant parts of the record, BOP's renewed motion will be granted and Ray's motions will be denied.

BACKGROUND

On January 13, 2006, Ray submitted a FOIA request to the Office of the General Counsel of the Federal Bureau of Prisons describing the information and documents he was requesting as follows:

> Copies of all records created by the BOP and/or the National Toxicology Laboratory, Inc. (NTL), regarding urine specimen #BOI652926, including chain-of-custody records, relevant portions of any ledgers kept by respective custodians, laboratory results/reports, etc. I also request copies of the contract between the BOP and NTL under which specimen #BOI65926 [sic] was tested, and copies of any Operations Memoranda or other documents which set forth procedure, protocol, standards or guidelines established to ensure the reliability and accuracy of urine analysis. Finally, I request disclosure of the identities of NTL personnel involved in the analysis of . . . specimen # BOI65926 [sic], the number and type of tests conducted on said specimen, whether the entire specimen was consumed in testing, and the disposition of both the tested and any untested portions of the specimen.
>
> If you determine that any portion of the specimen remains in the custody or control of either the BOP or NTL, I hereby request that such remaining portions of the specimen be preserved as evidence material to resolution of judicial proceedings.
>
> My final request is for copies of documents and/or disclosure of information referred to in disciplinary proceedings based on Incident Report #140-3543. See attached, DHO Report, p. 2, D., 1. thru 4. More specifically, as regards D., 4., I request a copy of the "memorandum" submitted to the DHO by LCDR R. Byrd, as well as copies of any publications and/or the source and substance of any unpublished information "reviewed" by R. Byrd which led him to conclude that the "metabolism and chemical structure of a dental anesthetic given to [me near the time of submission of urine sample showed] no comparison . . . [to] cocaine metabolites that would cause a false positive urine test result."

See BOP's First Mot. for Summ. J. [Dkt. # 14], Ex. A (FOIA Request); see also Compl. ¶ 6.[1]

Three months later, having received no response from the BOP, Ray attempted to appeal the

---

[1] The plaintiff uses two different numbers — BOI65926 and BOI652926 — in referring to the one specimen, and the defendant also uses two different numbers — B01652926 and BOI652926.

BOP's non-response, but his appeal was rejected because the agency had made no adverse determination. *See* Compl. ¶¶ 7-9. Ray filed the instant complaint alleging that the BOP's lack of response to his request violated the FOIA. He later filed an amended complaint that alleged that the BOP had a practice and custom of ignoring prisoners' FOIA requests, and that sought to enjoin the defendant from continuing its alleged practice. *See* Am. Compl. [Dkt. # 13] ¶ 11.

BOP acknowledges that it mishandled Ray's FOIA request upon receipt, and did not begin its search for responsive documents until after this lawsuit was filed. *See* First Decl. of Wilson J. Moorer ("First Moorer Decl.") [Dkt. # 14-2] ¶¶ 5-6. BOP interpreted Ray's FOIA request as seeking "a copy of all records created by the [BOP] in regards to the . . . [NTL] urine specimen #BOI652926; a copy of the contract between the BOP and NTL; a copy of any Operations Memoranda or policies regarding urine analysis; and the names of NTL personnel who conducted the urine test." First Moorer Decl. ¶ 4. After searching its Procurement Office, BOP released with redactions a portion of its contract with a firm called Phamatech, and determined that the remainder of the contract, 252 pages, was not responsive to Ray's FOIA request. *Id.* ¶¶ 6, 8. The BOP subsequently discovered that it had erred in identifying the Phamatech file as responsive to plaintiff's request, and, on February 13, 2008, "mailed a copy of NTL contract JN00c-024 to the Plaintiff." Second Decl. of Wilson J. Moorer ("Supp. Moorer Decl.") [Dkt. # 43-2] ¶ 12 & Ex. C. That release consisted of 63 pages, five of which contained redactions under FOIA exemptions 2 and 4.[2] *Id.*, Ex. C.

Meanwhile, BOP also searched the Legal Department of its Mid-Atlantic Regional Office and "determined" that any responsive records would be in Ray's Inmate Central File. First

---

[2] *See* 5 U.S.C. § 552(b).

Moorer Decl. ¶ 7. A search of Ray's inmate file identified two responsive documents of twelve pages each, one of which was a "document entitled Program Statement 060.08, Urine Surveillance and Narcotic Identification." *Id*. On October 1, 2007, BOP released a total of 97 pages to plaintiff, five of which contained redactions under FOIA exemptions 2, 4, 6 and 7(C). *Id*. ¶ 8 & Ex. B.

## DISCUSSION

1. <u>The Adequacy of the Search</u>

When, as here, the search for records is challenged, an agency is entitled to summary judgment if it establishes "beyond material doubt [] that it conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). For purposes of this showing, the agency "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and  . . . submitted in good faith." *Id*. (citations and quotations marks omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "If the requester produces countervailing evidence placing the sufficiency of the identification or retrieval procedures genuinely in issue, summary judgment is inappropriate." *Spannaus v. Central Intelligence Agency*, 841 F. Supp. 14, 16 (D.D.C. 1993) (citing *Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979)); *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search) (citation omitted).

Determinations about the adequacy of a FOIA search are guided by principles of reasonableness, *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998), mindful that an agency is required to produce only those records in its custody and control at the time of the FOIA request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). An agency may be faulted for not producing records only if it failed to produce evidence of an adequate search for records. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315-16 (D.C. Cir. 2003).

BOP has proffered Moorer's supplemental declaration, in which he describes the search in detail. Moorer has satisfactorily described his search for records responsive to each of the four parts of plaintiff's FOIA request as reasonably interpreted. *See* Supp. Moorer Decl. ¶¶ 6- 9, 14-15. Ray counters that defendant failed to search for "all" NTL records regarding his urine specimen, "including chain-of-custody records," records addressing specific questions about the testing of the specimen, and "any publications and/or sources" supporting R. Byrd's conclusions. Pl.'s Mot. for Partial Summ. J., Statement of Undisputed Material Facts [Dkt. # 48] ¶¶ 7-10. However, the FOIA "neither requires an agency to answer questions disguised as a FOIA request, or to create documents or opinions in response to an individual's request for information." *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985) (citations omitted). The fact that certain records may not have been located neither demonstrates the inadequacy of a search, *Boyd v. Crim. Div. of U.S. Dept. of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007) (citing *Iturralde*, 315 F.3d at 315; *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)), nor "plac[es] the sufficiency of the identification or retrieval procedures genuinely in issue." *Spannaus*, 841 F. Supp. at 16. BOP has adequately refuted Ray's suggestion of an inadequate

search by pointing to the Moorer declaration establishing the opposite. *See* Def.'s Statement in Response to Pl.'s Statement of Undisputed Material Facts [Dkt. # 50-1] ¶¶ 6-11. There being no genuine dispute about the otherwise adequate search, BOP is entitled to judgment as a matter of law on this issue.

    2. BOP's Withholding of Non-Responsive Records

BOP earlier had not provided sufficient support for its claim that 252 pages related to the Phamatech contract were not responsive to plaintiff's request. *See* Mem. Op. at 6. Moorer now explains that none of those pages is responsive because despite Ray's request specifically for a copy of the contract between BOP and NTL, "the Procurement Office inadvertently identified the Phamatech file as responsive to Plaintiff's request." Supp. Moorer Decl. ¶ 12. During the parties' briefing of the first summary judgment motion, BOP "rectified" the error by sending Ray the requested NTL contract, consisting of 63 pages, on February 13, 2008. *Id*. ¶ 13. BOP redacted information from five of those pages, which Ray did not challenge. *See* Mem. Op. at 3.

    3. Plaintiff's Systemic Claim

BOP was directed to address Ray's argument that it systematically delays processing prisoners' FOIA requests, which was liberally construed as a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*. *See* Mem. Op. at 7. The APA confers jurisdiction on the courts to review "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704; *see Bowen v. Mass.*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."). As a general rule, the FOIA is the exclusive remedy for obtaining improperly withheld agency records, *see Johnson v.*

*Executive Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002), and "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *accord Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007).

Under the FOIA's constructive exhaustion provision, a FOIA requester is "deemed to have exhausted his administrative remedies . . . if the agency fails to comply with the applicable time limit provisions of this paragraph," 5 U.S.C. § 552(a)(6)(C)(i), and may bring a lawsuit without first exhausting his administrative remedies. *See Thomas v. Comptroller of Currency*, 684 F. Supp. 2d 29, 32 (D.D.C. 2010) ("If the agency does not meet its deadline, 'the requester can immediately sue to obtain the requested records and he shall be deemed to have exhausted his administrative remedies' because of the agency's tardiness.' ") (quoting *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003)) (other citations omitted). Because the FOIA provides an adequate remedy for agency delay -- which Ray utilized in bringing this case -- a claim under the APA is not maintainable.[3] *See, e.g., Cohen v. U.S.*, ___ F.3d ___, ___, 2011 WL

---

[3] In any event, Moorer states that "the Bureau does not have a custom or practice of ignoring or delaying its response to inmate FOIA requests" and "strives to comply with the time limits set forth by FOIA," consistent with Department of Justice regulations set forth at 28 C.F.R. §§ 16.1-16.12. Supp. Moorer Decl. ¶¶ 19-20. Moorer denies that the FOIA requests of prisoners are treated differently from those of non-prisoners, and explains that, absent a valid reason to expedite a request, all FOIA requests are processed "on a first in, first out basis." *Id*. ¶ 21. Furthermore, Moorer states that in 2006, the year of plaintiff's request, BOP processed 98 percent of the FOIA requests it received "[e]ven with limited human resources in the Bureau's FOIA office." *Id*. ¶ 23. That processing rate, along with the admitted mishandling of Ray's request due to a "processing error," First Moorer Decl. ¶ 5, would belie a sweeping claim predicated on a broken system.

2600672, at *19 (D.C. Cir. July 1, 2011) (Kavanaugh, J., dissenting) ("A party cannot bring a freestanding APA suit when Congress has specified a different judicial review procedure relevant to the subject matter, so long as that congressionally specified review procedure is adequate.") (citation and internal quotation marks omitted); *Fornaro v. James*, 416 F.3d 63, 66-68 (D.C. Cir. 2005) (rejecting argument that "the [Civil Service Retirement Act] regime's exclusivity for individual benefits determinations does not preclude . . . a collateral, systemwide challenge to OPM policy."); *Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 449 (D.D.C. 1991) (dismissing APA claim in part as "a restatement of [plaintiff's] Privacy Act claims.").

## CONCLUSION

For the foregoing reasons, BOP, having satisfied its obligations under the FOIA, is entitled to judgment as a matter of law. Therefore, BOP's motion for summary judgment will be granted and Ray's motion for partial summary judgment and motion for leave to file additional "pleadings" will be denied. A separate Order accompanies this Memorandum Opinion.

                                                        _____/s/_____
                                                    RICHARD W. ROBERTS
                                                    United States District Judge

DATE: September 12, 2011